UNITED STATES, Appellee and Cross-Appellant,

v.

Michael D. SAUER, Mess Management Specialist Seaman Apprentice, U.S. Navy, Appellant and Cross-Appellee.

No. 41,969.
NMCM 80–1114.

U. S. Court of Military Appeals.

March 14, 1983.

For Appellant and Cross-Appellee: *Major Joseph M. Poirier,* USMC (argued).

For Appellee and Cross-Appellant: *Lieutenant Commander Michael R. McGuire,* JAGC, USN (argued); *Captain T.C. Watson, Jr.,* JAGC, USN (on brief); *Commander W.J. Hughes,* JAGC, USN.

*Opinion of the Court*

EVERETT, Chief Judge:

Contrary to his pleas, appellant was found guilty of twelve specifications of violating service regulations, in contravention of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. In particular, he was convicted of the possession, transfer, and sale of drugs on four separate occasions. *See* Article 1151, U.S. Navy Regulations, 1973. The members of his general court-martial sentenced him on October 4, 1979, to a dishonorable discharge, confinement at hard labor for 9 months, total forfeitures, and reduction to the lowest en-

listed pay grade. The convening authority approved this sentence, but the Court of Military Review affirmed the findings of guilty with minor modifications, and, upon reassessment of the sentence, approved a dishonorable discharge, confinement at hard labor for 9 months, total forfeitures for 4½ months and forfeiture of $330.00 pay per month for 12 months thereafter. 11 M.J. 872 (C.M.R.1981). The court reconsidered its decision at a later date and reaffirmed it.

The Judge Advocate General of the Navy certified this question for review by this Court:

> WAS THE UNITED STATES NAVY-MARINE CORPS COURT OF MILITARY REVIEW CORRECT AS A MATTER OF LAW IN ITS DETERMINATION THAT *ESTELLE V. SMITH,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), EFFECTIVELY OVERRULES *UNITED STATES V. SPIVEY,* 10 M.J. 7 (C.M.A.1980) AND *UNITED STATES V. MATHEWS,* 6 M.J. 357 (C.M.A.1978)?

On consideration of appellant's petition for grant of review, we granted this additional issue for review:

> WHETHER PROSECUTION EXHIBITS 23 AND 28 WERE ERRONEOUSLY ADMITTED INTO EVIDENCE WHERE IT WAS SHOWN THAT:
>
> (1) DURING A COURT RECESS, A GOVERNMENT "AGENT" APPROACHED THE APPELLANT AND ORDERED HIM TO COMPLETE CERTAIN DOCUMENTS THAT WOULD BE LATER USED IN AGGRAVATION AGAINST HIM, AND
>
> (2) DEFENSE COUNSEL WAS NOT ADVISED OF THIS ENCOUNTER?

I

A

The record of trial reveals that defense counsel objected to the admission of prosecution exhibit 20, a record of nonjudicial punishment awarded appellant on July 31, 1979. He asserted that the offered exhibit failed to meet the requirements for admissibility articulated in *United States v. Booker,* 5 M.J. 238 (C.M.A.1977). Trial counsel "requested . . . that the military judge . . . inquire" of appellant "whether . . . [he] was informed of his *Booker* rights"; the judge then asked appellant whether he had appeared at captain's mast on July 31, 1979, and whether, prior to those proceedings, he had been "afforded the opportunity to consult with legal counsel." Appellant answered in the affirmative to both these questions. The military judge also asked appellant whether he understood at that time that he had a right to talk to a lawyer and he again replied in the affirmative. Finally, the judge asked appellant whether he had turned down that opportunity. Appellant indicated that he did not talk to an attorney. No objection to the judge's inquiry was made at trial by appellant or by counsel.

The Court of Military Review held that it was error for the military judge to elicit this information from appellant during the sentencing portion of this court-martial. In particular, it stated:

> After defense counsel objected to the admission of Prosecution Exhibit 20, evidence of a prior nonjudicial punishment, because compliance with requirements of *United States v. Booker,* 5 M.J. 238 (C.M.A.1977), for admissibility had not been established, the military judge, relying on *United States v. Mathews,* 6 M.J. 357 (C.M.A.1979), elicited information from the accused showing that the *Booker* requirements had been satisfied. This was error. Any effort to compel an accused to testify against his will at the sentencing hearing clearly contravenes the Fifth Amendment. The essence of the basic constitutional principle that no person shall be compelled in any criminal case to be a witness against himself is the requirement that the Government which proposes to convict *and punish* an individual produce the evidence by the independent labor of its own officers, not by the simple, cruel expedient of forcing it from his own lips. *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981).

*Contra, United States v. Spivey,* 10 M.J. 7 (C.M.A.1980); *United States v. Mathews, supra.* The *Mathews/Spivey* holding that an accused may be compelled to respond to an inquiry by the military judge during presentencing proceeding to supply information establishing the admissibility of an otherwise inadmissible prosecution exhibit has been emasculated by the Supreme Court's ruling in *Estelle v. Smith, supra. Mathews* and *Spivey* have, in effect, been overruled. Therefore, Prosecution Exhibit 20 was inadmissible. We shall reassess the sentence.

11 M.J. at 874. The Judge Advocate General questions the correctness of this holding.

### B

█ Frequently, just as in the case at bar, the Government will offer in evidence for sentencing purposes a record of nonjudicial punishment which is maintained as part of the accused's service record. This evidence tends to increase the accused's sentence by demonstrating that earlier efforts to rehabilitate him have been unsuccessful. While for some purposes the Manual relaxes the rules of evidence during the sentencing phase of the trial, *see* para. 75*c*(1), Manual for Courts-Martial, United States, 1969 (Revised edition), no exemption from the rules is granted with respect to personnel records presented by the prosecution to show "the past conduct and performance of the accused." Para. 75*d*, Manual, *supra. Compare* paras. 75*c*(3) and 75*d*, Manual, *supra* (C.5, August 1, 1981), *with* para. 75*b*(2), *supra.* Thus, for such evidence the Government must demonstrate admissibility pursuant to the same rules that would apply to evidence offered to establish guilt. Accordingly, in order for a record of nonjudicial punishment to be received in evidence during the sentencing phase of a trial, the Government must affirmatively demonstrate that the record was maintained in compliance with applicable military regula-

tions concerning record-keeping and that, before the nonjudicial punishment was imposed, the accused was given an opportunity to consult counsel. *See United States v. Mack,* 9 M.J. 300 (C.M.A.1980); *United States v. Negrone,* 9 M.J. 171 (C.M.A.1980); and *United States v. Booker, supra.*

Although a record of nonjudicial punishment which on its face appears to be properly executed satisfies the conditions precedent for its admissibility, *United States v. Mack, supra,* a record containing unfilled blanks usually will not do so. Therefore, unless the Government offers other evidence to fill the gap left by the unfilled blanks in the record of nonjudicial punishment, such a record is inadmissible over the accused's objection.

Under our decisions in *Mathews* and *Spivey,* the Government may rectify the omissions in a record of nonjudicial punishment by securing testimony from the accused which demonstrates that the nonjudicial punishment was properly awarded. According to the rationale of those cases, no Fifth Amendment[1] or Article 31[2] privilege of the accused is invaded by such questioning during the presentencing phase of a trial, since he has already been convicted and the information is being adduced from him only with a view to providing more comprehensive information for use by the sentencing authority.[3] However, in view of the breadth of the language in *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), we must agree with the Navy-Marine Corps Court of Military Review that the view taken in *Mathews* and *Spivey* must now be discarded.

*Estelle v. Smith, supra,* involved the penalty phase of a bifurcated capital trial in a Texas state court. The trial court had admitted into evidence a psychiatrist's testimony that Smith was likely to commit similar crimes in the future—one of the critical elements which in Texas must be found by

---

1. U.S. Const. amend. V.

2. Uniform Code of Military Justice, 10 U.S.C. § 831.

3. Since this rule was firmly established by our decisions, appellant did not waive his rights by failing to object to the judge's questions or by refusing to respond thereto.

the jury if a death penalty is to be imposed. The psychiatrist based his opinion on interviews with Smith, which had been conducted pursuant to court order to determine if Smith was competent to proceed with the trial. Smith argued before the Supreme Court that he had been denied his Fifth and Sixth Amendment rights, since the interviews took place without notice to his counsel and without any warning of his right to remain silent.

On the other hand, the State of Texas— adopting a position akin to that espoused by our Court in *Mathews* and *Spivey*—contended that Smith had not been entitled to Fifth Amendment protection because his statements to the psychiatrist had been

> used only to determine punishment after conviction, not to establish guilt. In the State's view, "incrimination is complete once guilt has been adjudicated," and, therefore, the Fifth Amendment privilege has no relevance to the penalty phase of a capital murder trial.

*Id.* at 462, 101 S.Ct. at 1872.

This rationale, however, was expressly rejected by the Supreme Court, which emphasized that "[t]he essence of" the privilege against self-incrimination "is 'the requirement that the State which proposes to convict *and punish* an individual produce the evidence against him by the independent labor of its officers, not by the simple, cruel expedient of forcing it from his own lips.'" *Id.,* quoting *Culombe v. Connecticut,* 367 U.S. 568, 581–82, 81 S.Ct. 1860, 1867, 6 L.Ed.2d 1037 (1961). The Court could "discern no basis to distinguish between the guilt and penalty phases of respondent's capital murder trial so far as the protection of the Fifth Amendment privilege is concerned." 451 U.S. at 462–63, 101 S.Ct. at 1873 (footnote omitted).

There have been suggestions that the Supreme Court's refusal to distinguish between the guilt and penalty phases of

Smith's murder trial was based on its being a capital case. *See Baumann v. United States,* 692 F.2d 565 (9th Cir.1982). That view would be plausible if the majority opinion in *Estelle v. Smith, supra,* had referred to the Eighth Amendment or related its decision to the imposition of cruel and unusual punishment. *See, e.g., Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). However, the foundation for *Estelle v. Smith, supra,* is provided by the Fifth and Sixth Amendments—not the Eighth—and nothing in the logic of the Court's opinion suggests any constitutional distinction between capital and noncapital cases. Furthermore, in almost every instance heretofore in which a constitutional distinction between capital and noncapital cases has been urged—other than where the Eighth Amendment is directly involved— that distinction ultimately has been rejected. *See, e.g., Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (right to counsel in noncapital State criminal trial), which overruled *Betts v. Brady,* 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942); and *Kinsella v. United States ex rel. Singleton,* 361 U.S. 234, 80 S.Ct. 297, 4 L.Ed.2d 268 (1960) (military jurisdiction over civilian dependents), which repudiated a distinction between capital and noncapital cases relied on by two concurring justices in *Reid v. Covert,* 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957).

In questioning appellant, the military judge's purpose was to determine whether the record of nonjudicial punishment— which trial counsel offered into evidence against appellant during the sentencing phase—contained defects which would preclude its reception into evidence. Directly through the responses obtained from appellant, the military judge assured the admissibility of this evidence, which had an obvious and foreseeable tendency to increase appellant's punishment.[4] The salutary principle

---

4. Under such circumstances we cannot accept the view that the questioning of appellant had a "neutral purpose." While it cannot be gainsaid that appellant's responses were not used *directly* against him, as in the more typical case of a

violation of the Fifth Amendment, the same may be said of the responses in issue in *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). There, Smith's comments were used indirectly, to explain the foundation

that a sentencing authority should be provided with as much information as possible for consideration in imposing an appropriate sentence, *see United States v. Mack, supra,* does not in itself afford a legal basis for compelling a defendant to provide information which will increase his sentence; no other legal basis exists for exercising such compulsion.

Certainly, the Manual for Courts-Martial does not contemplate that an accused, after he has been convicted, may be forced to provide damaging information relevant to his sentencing; an accused has the option whether to make a statement—sworn or unsworn—or to remain silent. *See* paras. 75c(2)(a), (b), and (c) (Change 5) Manual, *supra. Accord* para. 75c(2) of the Manual which was in effect at the time of appellant's trial. Similarly, Fed.R.Crim.P. 32(a)(1) authorizes a convicted defendant "to present any information in mitigation of punishment"; but it does not purport to authorize the prosecution or the judge to compel him to provide information that will increase his punishment. Indeed, the Fifth Amendment, as explained in *Estelle v. Smith, supra,* affirmatively forbids a scenario wherein an accused is coerced by a judge to provide information that will increase his sentence.

If we allow the judge's questioning of the accused that took place in the present case, it will be difficult to distinguish some future case where a judge asks an accused to answer whether he is the same person who has been convicted of other crimes in a prior court-martial and uses the answer to increase the punishment imposed or even, under some circumstances, to enhance the maximum punishment imposable. *See* para. 127c, Section B, Table of Maximum

Punishments, Manual, *supra.* Indeed, under any rationale which permits the military judge in the present case to question Sauer for the purpose of obtaining information relevant to adjudging an appropriate sentence, an accused could also be compelled by the judge to recite all of his prior convictions and arrests or provide any other information that the judge wished to obtain for sentencing purposes. If we allow the first step to be taken here, there is no logical place to stop encroachment on the Fifth Amendment sanctuary which *Estelle v. Smith, supra,* provides an accused during sentencing proceedings.[5]

II

■ The issue we granted for review in this case at appellant's request addresses the admissibility of prosecution exhibits 23 and 28. The first challenged exhibit is an extract of "Administrative Remarks" entered in appellant's service record. In substance, it states that during the period of "1 Feb 78 to 31 July 78" appellant was assigned various marks based on an evaluation dated July 31, 1978 (prosecution exhibit 24). These marks were 2.8 in "Adaptability," "Military Behavior," and "Professional Performance." This exhibit also contained an entry which indicated appellant was informed that he had a right to make a statement but that he declined to do so. *Cf. United States v. Kline,* 14 M.J. 64 (C.M.A.1982). All entries on prosecution exhibit 23 were made on October 3, 1979, the second day of appellant's court-martial.

Prosecution exhibit 28 contains similar entries in Sauer's service record but covers the period from "1 Feb 79 to 31 July 79." The derogatory marks for this period are

---

of the psychiatrist's testimonial opinion regarding Smith's future dangerousness. Here, if anything, the situation presents a more direct violation, for the adverse evidence would not have been admissible at all without the compelled answers to serve as a predicate for admissibility. Under the circumstances, as did the Supreme Court in *Estelle v. Smith, supra,* we readily identify the use against the maker of responses obtained in violation of the Fifth Amendment.

5. The protection against compulsory incrimination granted by Article 31(a) of the Uniform Code was intended by Congress to parallel the privilege against self-incrimination provided by the Fifth Amendment. *See, e.g., United States v. Armstrong,* 9 M.J. 374 (C.M.A.1980). Article 31(b) of the Code, which establishes a warning requirement, does not apply in the present context. *United States v. Howard,* 5 U.S.C.M.A. 186, 17 C.M.R. 186 (1954).

2.8 in "Professional Performance" and "Military Appearance" and 2.0 in "Adaptability" and "Military Behavior." These marks are based on an evaluation dated July 31, 1979, which was contained in prosecution exhibit 29. Again the marks and the signed acknowledgement and waiver of rights were dated October 3, 1979, the second day of appellant's court-martial.

Defense counsel objected to the admission of prosecution exhibits 23 and 28 because during the trial, government agents had contacted appellant with respect to these documents without first notifying his counsel. *See* U.S. Const. amend. VI; Article 27, U.C.M.J., 10 U.S.C. § 827. The defense asserted that these government agents obtained appellant's written acknowledgment of rights with respect to adverse matters contained in these exhibits and his signed waiver of those rights in order to make these exhibits admissible at the court-martial. Accordingly, appellant contends that the evidence was obtained in violation of his right to counsel and should not have been received.

The precedents of our Court, *see United States v. Moles,* 10 M.J. 154 (C.M.A.1981); *United States v. Hill,* 4 M.J. 33 (C.M.A. 1977); *United States v. McOmber,* 1 M.J. 380 (C.M.A.1976);—and those of the Supreme Court, *see, e.g., United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980); *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); and *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964)—frown on any action by the Government which interferes with or erodes an accused's right to effective legal representation in connection with a criminal trial. Moreover, our disapproval of the deliberate preparation of administrative records to influence a sentence in a court-martial is well established. *See United States v. Brown,* 11 M.J. 263 (C.M.A.1981); *United States v.*

*Boles,* 11 M.J. 195 (C.M.A.1981). Therefore, we hold that the judge erred in admitting prosecution exhibits 23 and 28 over defense objection.[6]

### III

The Court of Military Review reassessed the sentence because of the judge's error in receiving in evidence prosecution exhibit 20, the record of nonjudicial punishment; but no reassessment took place with respect to the error in admitting prosecution exhibits 23 and 28. However, in light of the offenses of which appellant was convicted and the records of nonjudicial punishment that were properly received into evidence, we are convinced that this error had no appreciable impact on the sentence adjudged by the court members. *Cf. United States v. Kline, supra.* Accordingly, the decision of the United States Navy-Marine Corps Court of Military is affirmed.

Judge COOK concurs.

FLETCHER, Judge (dissenting):

I must disagree with my Brothers' opinion as to the certified question.

First, let me deal briefly with the rationale of the majority opinion that *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), does not state a unique rule as to death-penalty cases, because there is reliance upon the fifth and sixth amendments to the Constitution, instead of the eighth amendment as in other recent death-penalty cases. I would point out that the eighth amendment is used only as a super due-process tool in lieu of the due-process requirement of the fifth amendment. The eighth amendment has not been used by the Court to encompass all of the facets found in the fifth amendment. Further, three of the justices who concurred in the judgment in *Estelle v. Smith, supra,* relied upon the sixth amendment. My re-

---

**6.** Trial counsel argued that, even if defense counsel had been notified before Sauer signed the acknowledgment and waiver, counsel could have provided no meaningful assistance, since if he had advised appellant not to sign, a notation "refused to sign" would have been placed in the service record but the performance marks would nonetheless have been admissible. Under the circumstances of this case, we are unwilling to speculate that defense counsel would have been powerless if he had been advised of the intended actions.

search shows that the Court has not, in death-penalty cases, used the eighth amendment to reach into the sixth amendment. I therefore conclude that if the Court of Military Review and my Brothers are found to be correct, it must not be based in any way upon the above rationale, but upon their reading of the cases from this Court.

The thrust of the Court of Military Review's opinion is that the military judge compelled appellant to establish the admissibility of prosecution exhibit 20 in violation of his rights under the fifth amendment. It assumes that the evidentiary burden rests only on the Government to make clear on the record that an accused had the opportunity to consult with counsel prior to receiving a challenged nonjudicial punishment. In *United States v. Booker,* 5 M.J. 238, 244 (C.M.A.1977), this Court stated that where this information was not clearly shown on the offered exhibit, it was incumbent on the military judge to make an inquiry on the record to establish the necessary information. *See United States v. Davis,* 3 M.J. 430 (C.M.A.1977). Later decisions of this Court make clear that the trial judge may require the Government or the accused to assist him in performing this function. *See United States v. Spivey,* 10 M.J. 7 (C.M.A.1980); *United States v. Mack,* 9 M.J. 300 (C.M.A.1980), and *United States v. Mathews,* 6 M.J. 357 (C.M.A.1979). Accordingly, the assumption of the Court of Military Review that appellant was being compelled to make the Government's case on sentencing is simply not a correct reading of *Booker* and its progeny. *Cf. Estelle v. Smith, supra,* 451 U.S. at 465–66, 101 S.Ct. at 1874.

A second question arises as to the propriety of this Court's placing on the accused some responsibility to comply with the military judge's *Booker* inquiry. I believe this responsibility is appropriate since it is in the accused's interest that this inquiry is conducted (*see Von Moltke v. Gillies,* 332 U.S. 708, 723, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948)), and it is normally his burden to establish at least initially any denigration of his right to counsel which occurred outside the forum of the court. *See Kitchens v. Smith,* 401 U.S. 847, 91 S.Ct. 1089, 28 L.Ed.2d 519 (1971).

The decision of this Court in *United States v. Booker, supra,* was designed to preserve the integrity of a servicemember's removal decision under Articles 15 and 20 of the Uniform Code of Military Justice, 10 U.S.C. §§ 815 and 820, respectively. *See United States v. Syro,* 7 M.J. 431, 434 (C.M.A.1979). In particular, the Court was concerned with preventing infliction of any further harm upon a military accused at his court-martial as a result of a disciplinary punishment administered to him in violation of due process of law. *E.g., Burgett v. Texas,* 389 U.S. 109, 115, 88 S.Ct. 258, 262, 19 L.Ed.2d 319 (1967). To protect the accused from this harm, a procedure was devised to establish affirmatively on the record whether *in fact* an accused was afforded an opportunity to consult with counsel prior to accepting any such disciplinary punishment which the Government intended to use against him at a court-martial. This procedure was derived from seminal cases where questions were raised as to an accused's waiver of legal representation at trial (*see Von Moltke v. Gillies, supra,* 332 U.S. at 723–24, 68 S.Ct. at 323), or to an accused's waiver of a conflict of interest in his legal representation. *See United States v. Davis, supra* at 434, *citing United States v. Garcia,* 517 F.2d 272, 278 (5th Cir.1975). *See also United States v. Rivas,* 3 M.J. 282, 289 (C.M.A.1977) (Fletcher, C.J., concurring). A showing that no opportunity to consult with counsel was provided to an accused or a failure to conduct the necessary inquiry in the face of an otherwise silent record dictated that the exhibit be found inadmissible.

The decision of this Court in *United States v. Booker, supra,* must be understood and applied in an integral fashion. Its evidentiary remedy is not severable from its purpose or its procedure. *See United States v. Syro, supra.* Accordingly, in the present case where defense counsel seeks the benefits of our holding in *United States v. Booker, supra,* he also, by necessary implication, consents to meet the reasonable burden imposed on him by that decision.

A third point raised in the Court of Military Review's opinion is that the recent decision of the Supreme Court in *Estelle v. Smith, supra,* in someway emasculates the decisions of this Court in *United States v. Spivey,* and *United States v. Mathews,* both *supra.* Assuming the applicability of *Estelle* to a non-death-penalty case, it addresses the availability of the fifth-amendment privilege against compelled self-incrimination, while *United States v. Mathews, supra,* is concerned with an accused's protection under Article 31. As for the continued validity of *United States v. Spivey, supra,* despite some unnecessarily broad statements contained therein, I believe the result reached is still correct.

The Court of Military Review, in reaching its decision, relied heavily on the following language in *Estelle v. Smith, supra,* 451 U.S. at 463, 101 S.Ct. at 1873: "Any effort by the State to compel respondent to testify against his will at the sentencing hearing clearly would contravene the Fifth Amendment." However, the general principle of constitutional law which can be deduced from *Estelle v. Smith, supra,* 451 U.S. at 462–63, 101 S.Ct. at 1873, is that the availability of the fifth-amendment privilege against compelled self-incrimination depends not on the proceeding in which it is invoked, but on the nature of the statement and the exposure it invites. On the first point, I note that the trial judge's inquiry in the present case, as in *United States v. Spivey, supra,* was conducted for "the limited, neutral purpose of determining" whether appellant was afforded due process in his decision to accept nonjudicial punishment and forego his right of removal provided in Article 15. *Id.* at 465. The answers to these questions do not constitute affirmative and substantive evidence of his bad military record, but routine assurance to this Court of the integrity of his earlier decision. *See United States v. Mack, supra* at 320; *United States v. Syro, supra.* In such a situation, I do not believe *Estelle v. Smith, supra,* compels a conclusion that the nature of these statements comes within the ambit of the fifth amendment privilege against self-incrimination. *Cf. United States v. Nichols,* 13 M.J. 154 (C.M.A.1982).

Turning to the second point of *Estelle v. Smith, supra,* I hold that the consequences of appellant's responses to the judge are not sufficient to justify the application of the fifth amendment privilege. In *Estelle v. Smith, supra,* the prosecution used the court-ordered psychiatric testimony as evidence rendering the accused susceptible to the death penalty to which he was otherwise not exposed. In the present case, the answers of appellant do not increase his exposure to any punishment to which he would not otherwise be exposed if they were not given. More importantly, the military judge did not use these responses for anything other than the "neutral purpose" of determining whether appellant was afforded due process in connection with his earlier nonjudicial punishment. Of course, a related consequence of his statement was that the *Booker* remedy was not imposed with respect to prosecution exhibit 20, but this consequence I find no more severe than the results of a competency or sanity examination. *See Estelle v. Smith, supra,* 451 U.S. at 465–66, 101 S.Ct. at 1874. *Cf.* Note, *Requiring a Criminal Defendant to Submit to a Government Psychiatric Examination: An Invasion of the Privilege Against Self-Incrimination,* 83 Harv.L.Rev. 648 (1970). Accordingly, I would answer the Judge Advocate General's certified question in the negative.