**UNITED STATES, Appellee,**

v.

**Private First Class Gerald L. BALCOM, 120–60–6113, United States Army, Appellant.**

**CM 445882.**

U.S. Army Court of Military Review.

17 April 1985.

Lieutenant Colonel Arthur L. Hunt, JAGC, and Captain Thomas J. Feeney, JAGC, were on the pleadings for appellant.

Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Lieutenant Colonel Thomas M. Curtis, JAGC, and Captain Garreth E. Shaw, JAGC, were on the pleadings for appellee.

Before MARDEN, PAULEY and WERNER, Appellate Military Judges.

## OPINION OF THE COURT

PAULEY, Judge:

Contrary to his pleas, appellant was found guilty on 26 April 1984 by a military judge sitting as a general court-martial of wrongful distribution of marijuana in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (1982). The convening authority approved appellant's sentence to a bad-conduct discharge, confinement at hard labor for one year, forfeiture of all pay and allowances and reduction to the grade of Private E–1.

The appellant contends that the admission into evidence of Prosecution Exhibit 5, a record of nonjudicial punishment under Article 15, UCMJ, 10 U.S.C. § 815, subsequently determined to be invalid, materially prejudiced him as to the sentence imposed. We agree and will cure this error by reassessing the sentence in this case.

■ Records of proceedings under Article 15, UCMJ, are admissible at trial only if they are made or maintained in accordance with departmental regulations. *United States v. Sauer*, 15 M.J. 113 (C.M.A. 1983); *United States v. Yong*, 17 M.J. 671 (A.C.M.R.1983); paragraph 75*b* (2), Manual for Courts-Martial, United States, 1969 (Revised edition). The purpose of such evidence is to characterize the prior service of the accused and it may properly be considered by the military judge in arriving at a sentence. *See United States v. Mack*, 9 M.J. 300 (C.M.A.1980).

The record of nonjudicial punishment admitted in this case showed that the appellant had been punished for the wrongful use of marijuana in April 1983. The evidentiary basis for the nonjudicial punishment was the positive results of a urinalysis. In July 1984, some three months after his trial, appellant was advised by Army authorities that the urinalysis "did not meet all scientific or legal requirements for use in disciplinary or administrative actions" and that he could "petition the Army Board for Correction of Military Records (ABCMR) to seek a correction of any error or injustice that you believe may have occurred." Upon application to the ABCMR, the record of nonjudicial punishment was removed from appellant's military personnel records in October 1984.

 We hold that while the record of nonjudicial punishment was properly admitted at trial, the subsequent determination of its invalidity requires remedial action under Article 66, UCMJ, 10 U.S.C. § 866.[1] Although the facts concerning the impropriety of the nonjudicial punishment come before this Court in the form of extra-record appellate exhibits, we find that this evidence *dehors* the record may be considered for purposes of sentence relief. *United States v. Lanford*, 20 C.M.R. 87 (C.M.A.1955); *United States v. Johnson*, 1 M.J. 36 (C.M.A.1975). Remaining for consideration is the prejudicial effect of this invalid record of nonjudicial proceedings on the sentence received by Private Balcom. We believe it was substantial.

The appellant presented a favorable record of service during the proceedings in extenuation and mitigation. During his approximate three and one-half years of service he had received several certificates of appreciation or achievement and had been awarded the Good Conduct Medal and the Army Achievement Medal. Apparently, the only blemish on his record was the nonjudicial punishment in question.

The facts surrounding this record of nonjudicial punishment were initially elicited by the trial defense counsel on direct examination of the appellant during his sworn testimony in sentencing proceedings. Relevant portions of his testimony are as follows:

Q. Private Balcom, you've received an Article 15 about a year ago, is that correct?

A. Yes, sir.

Q. Did you use hash in reference to that Article 15?

A. No, sir, I made a statement and attached it to my Article 15. My chain of command at the time was shocked to hear that I'd come up positive as much as I was—and I went into Major Hood stating my case and out of the 12 people that had been—.

Q. Did you—you did not use the hashish?

A. No, sir.

Q. In any event they initially chose to bar you from reenlistment due to that, is that correct?

A. Yes, sir and it was put in my restricted file.

Q. Was the bar lifted?

A. Yes, it was, sir, six months later.

Q. Show you Defense Exhibit Q for identification.

A. This is from my XO at the time. During the time of the bar I did receive a couple of those awards. After six months the XO put down that he thought I was indespensible [sic] to the unit, very hard working.

Q. I'll show you Defense Exhibit R for identification consisting of two pages, did you also receive that in regard to lifting your bar?

A. Yes, sir.

Q. Who is the person signing the underlined letter there?

A. Which—.

Q. This letter. (Pointing to exhibit.)

A. This is Captain Baynes.

Q. And who is he?

A. He was my commanding officer at the time and he speaks of my dedication and loyalty.

The two defense exhibits referred to in this testimony were letters by the appellant's commanding officer and executive officer, requesting that the bar to reenlistment be lifted. These letters spoke in most favorable terms as to the appellant's performance of duty. The *entire* cross-examination of the appellant, as follows, was related to these Article 15 proceedings.

Q. Private Balcom, I'm a little curious about the Article 15 you received Defense Exhibit R for identification says that you came up positive on the urinalysis, did you come up positive?

A. Yes, I did, sir.

1. [The Court of Military Review] may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. Article 66(c), UCMJ.

Q. But you don't believe that you were guilty of using marijuana?

A. No sir, not at that time, no, sir.

Q. Any explanation you can think of for why that would happen? ..

A. Yes, sir, the statement I attached to the Article 15—.

MJ Excuse me a minute, you said sworn statement, but I'm not sure we ever swore the witness, did we?

DC I think we did.

TC Yes, Your Honor, Yes, I did, sir.

MJ Very well, go ahead.

Q. Please go ahead.

A. I attached a statement and my chain of command stood behind me when I went in. I had been to a concert the night before, had been in the air, that was the only possible explanation I could figure unless it had been a mistake.

Q. So you came up positive because you had been to a concert where there had been drugs used?

A. Or it had been indeed a mistake.

TC I have no other questions, sir.

DC Nothing further, sir.

The trial counsel later relied upon appellant's prior use of marijuana and his failure to accept responsibility for his actions as part of his argument for a harsh sentence. The relevant portion of the argument is as follows:

The government submits that the accused has done only what's expected of any soldier during their time in the military. He's been in three and a half years approximately, he's done his job. Every soldier is expected to do his job, that's why they get paid. Everyone get's [sic] paid to do their job. He's not done more than expected of him, he's met the standards as Sergeant Scott has said. Unfortunately, the accused met the standards only in some areas and that is the job related areas. He fell down in some of the other areas as evidenced by the Article 15 he received for marijuana use or

hashish use back in May of '83. A use which he says he did not do but was merely a result of being present at a concert where someone else was using drugs.

■ The posture of the evidence to be considered on sentencing was that of an accused with an excellent record of service, convicted of a charge and specification involving one incident of distribution of a relatively small amount of marijuana. Additionally, he had received prior punishment under Article 15, UCMJ, for use of marijuana. Upon examination, he denied the validity of the nonjudicial punishment and offered a somewhat implausible explanation for a positive urinalysis.[2] There is a great risk that these facts would present to the sentencing authority a significantly false picture of the appellant's prior service and perhaps cause him to have a jaundiced view of the appellant's honesty, potential for rehabilitation, and his apparent inability to accept responsibility for prior misconduct.

The record of nonjudicial punishment was most effectively and justifiably used by government counsel as an argument for increased punishment. We cannot escape the conclusion that this evidence most likely had a profound effect as to the sentence in this case. We also note the distinct similarity of the two incidents of misconduct at issue here as a factor weighing heavily in favor of our finding of a prejudicial impact. *United States v. Cisneros,* 11 M.J. 48 (C.M.A.1981). *See also United States v. Woolery,* 5 M.J. 31 (C.M.A.1978); *United States v. Weaver,* 1 M.J. 111, 118 n. 8 (C.M.A.1975). Finally, the fact that the convening authority took no mitigating action on the sentence may be considered as evidence that the prejudicial effect of the invalid proceedings remained extant at the time of the review and action. *United States v. Goodwin,* 9 M.J. 216 (C.M.A. 1980). Accordingly, we find that a mean-

2. Even if a record of nonjudicial punishment has been properly admitted in evidence, an accused remains free to deny his guilt of the misconduct for which nonjudicial punishment was imposed or to offer whatever explanation for the offense he may choose. *United States v. Mack, supra.* Common sense tells us that he will do so at some peril.

ingful reassessment of the sentence is required in this case.

The findings of guilty are affirmed. On the basis of consideration of the entire record, only so much of the sentence as provides for confinement at hard labor for one year, forfeiture of all pay and allowances, and reduction to the grade of Private E–1 is affirmed.

Senior Judge MARDEN and Judge WERNER concur.