**UNITED STATES, Appellee,**

v.

**Private First Class Philip E. GILBERT, 466–43–4611, United States Army, Appellant.**

**ACMR 8700453.**

U.S. Army Court of Military Review.

20 Jan. 1988.

For Appellant: Major Dale K. Marvin, JAGC, Major John R. Lee, JAGC, USAR, Captain James E. O'Hare, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Gary L. Hausken, JAGC, Captain Richard D. Rubino, JAGC (on brief).

Before HOLDAWAY, De GIULIO, and CARMICHAEL, Appellate Military Judges.

### OPINION OF THE COURT

PER CURIAM:

Appellant was tried on 26 February 1987 by a military judge sitting as a special

court-martial. Pursuant to appellant's pleas, he was found guilty of wrongful distribution of Lysergic Acid Diethylamide (LSD). He was sentenced to a bad-conduct discharge, confinement for two months, forfeiture of $438.00 pay per month for four months, and reduction to Private E–1.

■ Appellant alleges that "the military judge erred to the substantial prejudice of appellant by forcing appellant, over objection, to answer cross-examination questions about unrelated uncharged misconduct, a matter clearly beyond the scope of direct examination and violative of his privilege against self-incrimination." We agree. *See United States v. Thomas,* 16 M.J. 899 (A.C.M.R.1983) (trial counsel's cross-examination improper because it exceeded scope of direct testimony).

During the sentencing phase of the trial, appellant gave direct testimony that he had successfully completed the Army's Alcohol and Drug Abuse Prevention and Control Program (ADAPCP). He further testified that he had entered the ADAPCP primarily because of alcohol abuse, but, as a result of the program, had learned that neither alcohol nor drugs were the answer to his problems. Over the defense's objection that cross-examination exceeded the scope of direct testimony, trial counsel was permitted to question appellant about his use of LSD on the night of the charged offense. Appellant answered that he had voluntarily told a noncommissioned officer that he had taken a "dose" of LSD that night.

Several facts are clear from the trial record. First, appellant entered the ADAPCP after the drug distribution charge of which he was convicted, not before. Second, the uncharged misconduct elicited on cross-examination—appellant's use of LSD—also occurred before appellant's participation in the program. Third, appellant's *prior* use of LSD was not shown to be the reason that he entered the pro-

gram. Appellant testified that the principal reason he was in the program was because of alcohol abuse. Fourth, trial counsel did not ask appellant why he entered the ADAPCP, but about a specific incident involving appellant's use of LSD. Under these circumstances, we are unpersuaded that appellant's direct testimony "opened the door" for inquiry into a specific act of uncharged misconduct. *See Thomas,* 16 M.J. at 900.

■ Considering the serious nature of the offense of which he was convicted,[1] the sentence limitation of the special court, the fact that, at best appellant was characterized as an average soldier, and that appellant's sentence was within the confines of his pretrial agreement,[2] we find appellant suffered no prejudice as to sentence. *Cf. United States v. Kinman,* 25 M.J. 99, 101 (C.M.A.1987) (test for prejudice is whether adjudged sentence greater than sentence that would have been imposed absent error) (citations omitted).

In an abundance of caution, however, we will reassess the sentence. The findings of guilty are affirmed. Considering the error noted and the entire record, including the issues personally specified by appellant, only so much of the sentence is affirmed as provides for a bad-conduct discharge.

De GIULIO, Senior Judge, dissenting:

On direct examination appellant testified that he had been in the Drug and Alcohol program, that he had successfully completed it, and that it taught him that *drugs and alcohol* were not the answer to his problem. During cross-examination the following colloquy occurred:

Q: Private First Class Gilbert, you had talked to several people with regard to your offense including First Sergeant Peterson and Master Sergeant Baker, hadn't you.

---

1. "It has often been asserted, and as often acknowledged, that drug abuse in the military is a most serious problem." *United States v. Trottier,* 9 M.J. 337, 345 (C.M.A.1980) (footnote and citation omitted). Appellant pled guilty to wrongful distribution of hard drugs to another soldier.

2. *United States v. Hendon,* 6 M.J. 171, 175 (C.M. A.1979) ("[A]ccused's own sentence proposal is a reasonable indication of its probable fairness to him.") (citation omitted).

A: Yes, sir.

DC: Objection. I believe it is beyond the scope, sir.

MJ: Not necessarily. I'll allow it until we find out what were [sic] doing.

Q: And, isn't it true that First Sergeant James Peterson or Master Sergeant Baker had asked you if you had used any LSD that night?

DC: Objection, sir. It's definitely beyond the scope of what he testified to. There was no discussion of what he told anybody.

. . . . .

A: I voluntarily told Master Sergeant Baker. I found out here today that I had not told the First Sergeant. I thought that I did.

Q: You didn't tell the First Sergeant what?

A: That I had indeed taken a dose.

Military Rule of Evidence 301(e) provides, in part,

> *Waiver by the accused.* When an accused testifies voluntarily as a witness, the accused thereby waives the privilege against self-incrimination with respect to the matters concerning which he or she so testifies. If the accused is on trial for two or more offenses and on direct examination testifies concerning the issue of guilt or innocence as to only one or some of the—offenses, the accused may not be cross-examined as to guilt or innocence with respect to the other offenses unless the cross-examination is relevant to an offense concerning which the accused has testified. This waiver is subject to Mil.R.Evid. 608(b).

Manual for Courts–Martial, United States, 1984, Mil.R.Evid. 301(e). The mere act of taking the stand does not waive the privilege against self-incrimination; waiver depends upon the content of the cross-examination. Manual for Courts–Martial, United States, 1984, Analysis of Mil.R.Evid. 301(e), App. 22, A22–6. In this case, appellant's testimony concerning his participation in the Drug and Alcohol program opened the door to cross-examination concerning the reasons why he participated in that program, i.e., his prior use of drugs and alcohol. *See generally United States v. McSwain,* 24 M.J. 754 (A.C.M.R.1987); *United States v. Bowling,* 16 M.J. 848 (N.M.C.M.R.1983). I believe, therefore, that under Military Rule of Evidence 301(e), appellant's testimony on direct examination waived his privilege against self-incrimination.

I am compelled to discuss the issue of the scope of the cross-examination of appellant and the admissibility of other acts of misconduct during the sentencing proceedings. Appellant cites *United States v. Thomas,* 16 M.J. 899 (A.C.M.R.1983) to support his contention that the trial counsel exceeded the scope of direct examination and violated the privilege against self-incrimination. In *Thomas,* the accused testified during the sentencing proceedings that she desired to be all she could be in the Army. She did not discuss the underlying offense in her direct testimony. Trial counsel cross-examined concerning the circumstances surrounding the offense of which she just had been found guilty. This court, in *Thomas,* held that the cross-examination exceeded the scope of direct examination and violated the privilege against self-incrimination, citing *United States v. Sauer,* 15 M.J. 113 (C.M.A.1983) and Military Rule of Evidence 301(e).

I believe that *Thomas* misapplied *Sauer.* In *Sauer,* during the presentencing proceedings, defense counsel objected to the admission into evidence of records of nonjudicial punishment without a showing that the accused had been afforded the opportunity to consult with counsel.[3] At the request of trial counsel, the military judge questioned the accused who apparently had not taken the stand to testify. He thus established the predicate for the admissibility of the evidence. The court overruled *United States v. Spivey,* 10 M.J. 7 (C.M.A. 1980) and *United States v. Mathews,* 6 M.J. 357 (C.M.A.1979). The rationale of the overruled cases was that no fifth amendment or Article 31, UCMJ, privilege is violated by questioning the accused during the

---

**3.** *See United States v. Booker,* 5 M.J. 238 (C.M.A. 1977).

presentencing phase of trial because he has already been convicted and the information is being elicited from him only with a view to providing more comprehensive information.

Applying *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981),[4] the United States Court of Military Appeals held in *Sauer* that the bench inquiry of the military judge coerced Sauer into providing information that would increase his sentence in violation of the privilege against self-incrimination.

I believe this court in *Thomas* unnecessarily applied the rule in *Sauer* to the facts then before it. In *Sauer,* the accused was not subject to cross-examination because he was not testifying at the time of the bench inquiry. Neither *Spivey* nor *Mathews,* the cases *Sauer* overruled, involved cross-examination. Each case involved a bench inquiry similar to the providence inquiry. I recognize that appellant may limit his testimony in the sentence phase of the trial to one or more of the specifications of which he has been found guilty. *See* Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 1001(c)(2)(A). My analysis of *Thomas,* in light of *Sauer,* causes me to conclude that where appellant elects to make a sworn statement in an attempt to mitigate his punishment, and does not specifically limit his testimony to one or more of the offenses of which he has been found guilty, he opens the door to cross-examination concerning the facts and circumstances surrounding commission of the offenses. This conclusion is consistent with the intent to expand the admissibility of evidence to be presented to the court-martial during sentencing under Rule for Court–Martial 1001. *See United States v. Green,* 21 M.J. 633, 635 (A.C.M.R.1985); *see also United States v. Harrod,* 20 M.J. 777, 779 (A.C.M.R.1985). I believe the application of *Thomas* to the facts before us compounds the misapplication of *Estelle*

and *Sauer* in unnecessarily limiting the scope of cross examination of appellant. I would affirm the findings of guilty and the sentence.

---

4.  *Estelle v. Smith* involved a bifurcated capital trial in Texas. An unsworn statement of Smith was admitted indicating that he was likely to commit similar crimes in the future which was a critical element to imposition of the death penalty. Texas argued a position similar to

*Spivey* and *Mathews, i.e.,* that incrimination is complete once guilt is established and the fifth amendment does not apply to the penalty phase of trial. *Estelle* does not involve cross-examination of an accused.