UNITED STATES, Appellee,

v.

Louis C. HENDON, II, Private First
Class, U. S. Army, Appellant.

No. 34,845.

CM 435882.

U. S. Court of Military Appeals.

Feb. 5, 1979.

For Appellant—*Major Benjamin A. Sims* (argued); *Colonel Robert B. Clarke; Captain Carlos A. Vallecillo* (on brief).

For Appellee—*Captain Richard A. Kirby* (argued); *Colonel Thomas H. Davis; Lieutenant Colonel R. R. Boller* (on brief); *Captain Laurence M. Huffman* (on brief); *Captain David P. Saxon* (on brief).

## Opinion

COOK, Judge:

We initially granted review to consider three assignments of error. Subsequently, we vacated that part of the grant as related to an alleged error resulting from the post-conviction transfer of the accused from the situs of trial.[1] *See United States v. Vick,* 4 M.J. 235 (C.M.A. 1978). Further examination of the alleged insufficiency of the trial judge's inquiry into the understanding of the accused and counsel for both parties of the terms of a pre-trial agreement on a plea of guilty satisfies us that the inquiry was adequate. *United States v. King,* 3 M.J. 458 (C.M.A.1977); *United States v. Green,* 1 M.J. 453 (C.M.A. 1976). As presented in the petition for grant of review, the remaining question is whether the accused was "substantially prejudiced by the court members' failure to follow the military judge's sentencing instructions."

■ The accused was convicted of robbery and the subsequent removal of the victim to a field, where he was bludgeoned into unconsciousness. The authorized pun-ishment for these offenses included confinement at hard labor for 13 years. Under the Uniform Code of Military Justice, in a case tried by court members, a sentence that includes confinement at hard labor in excess of 10 years must have the concurrence of three-fourths of the members present; only two-thirds of them need agree if the sentence includes confinement for 10 years or less. Article 52(b)(2), (3), UCMJ, 10 U.S.C. § 852(b)(2), (3). Sentence deliberation by the court members begins with a general discussion of the matter, proceeds to presentation of proposals for specific sentences, and concludes with a vote by secret written ballot[2] on each proposal, starting "with the lightest."[3]

At trial, the judge's sentence instructions accorded with the law. In pertinent part, he advised the court members that the maximum punishment included confinement for 13 years, but they were "at liberty to arrive at any lesser legal sentence." Instructing on the voting procedure, he advised them as follows:

> After completion of discussion and the written proposal of sentences on slips of paper by the members who desire to propose them, the junior member will collect the proposed sentences and submit them to the president. The court will then vote by secret written ballot on each proposed sentence in its entirety beginning with the lightest, that is, least severe proposed sentence, until a sentence is adopted by the required concurrence of two-thirds, that is, six of the members now present. In this connection, if the sentence would include confinement at hard labor in excess of 10 years, that would require the concurrence of three-fourths, that is, seven of the members now present. The junior member will collect and count the votes. The count of the votes will then be checked by the president who shall forthwith announce the result of the ballot to the members of

---

1. 4 M.J. 256 (C.M.A. 1978)

2. Article 51(a), Uniform Code of Military Justice, 10 U.S.C. § 851(a).

3. Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 76*b*(1) and (2); *United States v. Hoff,* 19 U.S.C.M.A. 246, 41 C.M.R. 246 (1970).

the court. If the court votes on all of the proposed sentences without reaching the required concurrence of at least six members, then you may repeat the process of discussion and must repeat the process of proposal of sentences and voting.

After about an hour and a half of closed session deliberation, the members indicated they had arrived at a sentence. Announcing it in open court, the president declared that "three-fourths of the members present" concurred in the vote; the sentence included confinement at hard labor for 3 years. A sentence work sheet used by the members, which is included in the record as an appellate exhibit, reproduces the standard form of announcement of a sentence, with the percentage of concurrence expressed as follows: ". . . upon secret written ballot (~~Two-thirds~~) (Three-fourths) of the members present at the time the vote was taken concurring, sentences you."[4]

Defense counsel made no objection to the sentence announcement; nor did he request a poll of the court members. However, on review before the convening authority and the Court of Military Review, the accused contended the court members had used an erroneous percentage to determine the sentence, and that percentage could have denied him a lighter sentence than that adjudged. The contention postulated that, during the court members' deliberations, proposals for a lesser sentence than that announced may have been submitted; that one or more of these attained the concurrence of six members (two-thirds); but all proposals for a sentence lighter than that announced were rejected because they did not obtain the agreement of seven, that is, three-fourths of those present. The convening authority's staff judge advocate described the defense argument as "speculative," and the convening authority denied the accused's request for a rehearing on the sentence. Without comment on the matter, the Court of Military Review affirmed the convening authority's action.

Appellate defense counsel concede that seven members might indeed have "agreed on the first sentence [that is, the least severe of the sentence proposals] voted on." On that supposition, since the adjudged sentence provides for confinement at hard labor of less than 10 years, it undeniably is legal, as it had the concurrence of more than the two-thirds percentage required by Article 52. Nevertheless, counsel argue that it is possible there were, in fact, other proposals less severe than that announced, and these were defeated because the court members were confused as to the percentage of concurrence required to arrive at a sentence.

No evidence appears in the record of any proposal of a sentence less severe than that announced; and no direct evidence exists that any such proposal had the concurrence of six members, but the vote was rejected because the members believed that agreement of seven members was required. Appellate defense counsel would have us infer these facts from the announcement by the president that three-fourths of the members concurred in the sentence and the indication to that effect on the sentence work sheet.

Federal civilian criminal practice mandates unanimous agreement of the jury for a verdict of guilty. Fed.R.Crim.P. 31(a). It does not, however, require the jury to declare its unanimity as part of the announcement of its verdict. Some states authorize a verdict on less than total concurrence; here, too, declaration of the legal percentage of concurrence is not required as part of announcement of the verdict. Both jurisdictions authorize polling of the jury to determine if there was the requisite percentage of concurrence. Fed.R.Crim.P. 31(d); Or.Rev.Stat. §§ 17.355, 136.450. The military practice is different.

■ The Uniform Code requires the court-martial to "announce its findings and sentence to the parties as soon as determined." Article 53, UCMJ, 10 U.S.C. § 853. It does not require concurrent declaration of the percentage of agreement on the find-

---

4. *See* paragraph 76*b* (4); Appendices 8*b* at A8–25 and 13*a* at A13–1, Manual *supra.*

ings of guilty or the sentence, but such declaration is required by the Manual for Courts-Martial, United States, 1969 (Revised edition). Further, the Manual specifies that the declaration as to concurrence should be "[o]nly the required percentage," not the actual fraction of agreement in the vote.[5] Neither the Code nor the Manual expressly authorizes a poll of the court members. It has been suggested that the procedure is allowable as a practice sanctioned by federal civilian law and not contrary to, or inconsistent with, the Uniform Code or the Manual,[6] but this Court has avoided decision on the matter. *See United States v. London,* 4 U.S.C.M.A. 90, 97, 15 C.M.R. 90, 97 (1954).

■ Tested by the Manual's caution to limit the announcement of the percentage of concurrence to the fraction required by law for the sentence adjudged, the announcement of the president was incorrect. On its face, however, the error did not affect the validity of the sentence. The Code requires only announcement of the sentence; and the Manual provision is merely one of "form." *United States v. Downs,* 4 U.S.C.M.A. 8, 15 C.M.R. 8 (1954). The accused nonetheless perceives the departure from approved form as demonstrative of a substantive misconception by the court members of the required percentage of concurrence to arrive at the sentence announced. In our opinion, the error of form does not reasonably support an inference of an error of substance.

■ The court members were not instructed on the Manual provision for decla-ration of "only the required percentage" of concurrence. We can assume that the trial judge knew the Manual provision,[7] and that announcement of a percentage of concurrence on the vote different from that provided for by the Manual was an "irregularity" of the kind "he should bring . . . to the attention of the court" members, as provided by paragraph 76c of the Manual. *See also United States v. Downs, supra; cf. United States v. Cox,* 17 C.M.R. 418 (A.B.R. 1954). However, in the absence of instruction as to the law by the judge, court members cannot be presumed to know a technical legal rule of procedure. *United States v. Keith,* 1 U.S.C.M.A. 442, 447, 4 C.M.R. 34, 39 (1952). Consequently, the president's declaration cannot reasonably be construed to indicate that the members believed the reported percentage was the minimum fraction "required" by law. Instead, it would appear that the announced percentage of agreement was the fraction actually achieved in the vote, not a declaration of the court members' belief that it was the minimum concurrence legally required for agreement on the sentence.

■ The accused's challenge to the adjudged sentence has a further flaw. We have already noted that no evidence exists to support his basic assumption that proposals were made for a sentence lighter than that announced. Except for a somewhat longer period of confinement at hard labor, the adjudged sentence accorded with what the accused proposed to the convening authority when he initiated the negotiations that resulted in his pretrial agreement to

5. *See* paragraphs 74g and 76c; Appendix 8b at A8–23 and A8–25, Manual *supra.*

6. Feld, A Manual of Courts-Martial Practice and Appeal § 72 (1957). Early board of review cases hold that "on both principle and authority the polling of the members of a court-martial is unauthorized and improper." *United States v. Tolbert,* 14 C.M.R. 613, 617 (A.F.B.R. 1953). The conclusion is based on the fact that the vote is secret and a poll would violate that secrecy (*United States v. Connors,* 23 C.M.R. 636 (A.B.R. 1957); *United States v. Nash,* 5 U.S.C.M.A. 550, 555–6, 18 C.M.R. 174, 179–80 (1955) (Brosman, J., concurring)), and "[h]istorically, the members of a court-martial [act]

as a unit." *United States v. Tolbert, supra* at 617. Whether this rationalization is compatible with the requirement embodied in the standard instruction on findings of guilty that each member "must impartially resolve the ultimate issue . . . in accordance with the law, the evidence admitted in court, and [his] own conscience" and the right of the members "to conscientiously disagree" on the sentence, need not detain us. *See* DA Pamphlet No. 27–9, paragraphs 2–4 at p. 2–6 and 8–9 at p. 8–11 (May 1969).

7. *See United States v. Montgomery,* 20 U.S.C. M.A. 35, 39, 42 C.M.R. 227, 231 (1970).

plead guilty. Absent evidence to the contrary, accused's own sentence proposal is a reasonable indication of its probable fairness to him. *United States v. Johnson,* 19 U.S.C.M.A. 49, 50, 41 C.M.R. 49, 50 (1969). Of course, the sentence factors that may be taken into account in connection with a pretrial plea agreement may be different from those before the court-martial. *See United States v. Villa,* 19 U.S.C.M.A 564, 567, 42 C.M.R. 166, 169 (1970); *cf. United States v. Green, supra* at 454–5. Also, a court-martial can legally, and we may perhaps judicially notice that, in practice, does, adjudge a sentence less than that provided in the pretrial agreement. *United States v. Villa, supra* at 569, 42 C.M.R. at 171 (Ferguson, J., dissenting).

With due regard to the enumerated circumstances, we are convinced no reasonable likelihood exists that at least one proposal for a sentence less than that adjudged was presented to the court members; that this proposal obtained the concurrence of six members; and that, notwithstanding such concurrence, the proposal was rejected because the members believed the agreement of seven was required by law for that kind of sentence. In short, as the convening authority's staff judge advocate indicated, the accused's postulates constitute mere speculation.

The decision of the United States Army Court of Military Review is affirmed.

PERRY, Judge (concurring in the result):

I agree with the principal opinion that the trial judge's inquiry of the accused and counsel regarding the pretrial agreement was adequate to meet this Court's announced standards in this area. Also, I agree with the conclusion that the appellant's contention concerning the voting of the court members on his sentence constitutes, under the circumstances of this case, mere conjecture. Had the trial judge instructed the members to announce only the vote *legally required* to impose sentence, or had the appellant been able to present to the Court some other indicia of actual voting irregularity, then the reasonable possibility would exist that the members, as the appellant suggests, could have erroneously concluded that they needed seven votes, to arrive at a sentence. In the absence of either, however, only speculation remains.

I expressly disassociate myself from that portion of the lead opinion which, in actuality, tests the appellant's contentions for prejudice by comparing the adjudged sentence against the offer of the appellant in the negotiations with the convening authority for a pretrial agreement. To me, this linkage is irrelevant as well as inappropriate in this inquiry.

FLETCHER, Chief Judge (concurring in part and dissenting in part):

I concur in the majority opinion as to resolution of the question that falls within the purview of *United States v. Green,* 1 M.J. 453 (C.M.A.1976), and *United States v. King,* 3 M.J. 458 (C.M.A.1977).

I dissent from the balance of the opinion inasmuch as it ignores the mandate of Article 52(b)(2), (3), Uniform Code of Military Justice, 10 U.S.C. § 825(b)(2), (3), and paragraph 76*b*(2), Manual for Courts-Martial, United States, 1969 (Revised edition), which provides as follows:

The court then votes on the proposed sentences, beginning with the lightest, until a sentence is adopted by the concurrence of the required number of members.

In this case the court was composed of nine members. Thus, a three-fourths' majority amounted to seven; a two-thirds' majority amounted to six. The announced sentence, agreed to by three-quarters of the members included, *inter alia,* three years confinement. At first blush this award might seem suitable as it was adjudged by a majority larger than the two-thirds required by law. However, it unfortunately allows the possibility that a lesser sentence agreed upon by six members might have been passed by in favor of a higher award by seven members.

Thus I consider the announced sentence on its face prejudicial to the appellant and would overrule the lower court's affirmance in this regard.