UNITED STATES, Appellee,

v.

John W. KINMAN, Technical Sergeant
U.S. Air Force, Appellant,

No. 56,992.
ACM 25393.

U.S. Court of Military Appeals.

Sept. 25, 1987.

For Appellant: *Colonel Leo L. Sergi* and *Major Charles L. Wille.*

For Appellee: *Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni, Captain Jeffrey H. Curtis.*

*Opinion of the Court*

EVERETT, Chief Judge:

A general court-martial judge sitting alone convicted appellant of communicating indecent language to his daughter and soliciting her to commit an indecent act, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The sentence adjudged was a bad-conduct discharge, confinement for 18 months, and reduction to pay grade E–4. The convening authority approved these results, and the Court of Military Review affirmed. Appellant complains that he was prejudiced by improper admission of evidence during presentencing proceedings. We now grant the petition and reverse the decision below.

After appellant pleaded guilty to the two sexually-related offenses with which he was charged, the prosecution introduced, over a multi-pronged defense objection, a pretrial statement given by appellant's daughter to the Air Force Office of Special Investigations (OSI). Therein she asserted that appellant had committed other sexual offenses against her. The Court of Military Review held that, because the uncharged allegations were "so repugnant" and "so much more reprehensible than the acts charged that the danger the accused would be sentenced for the acts not charged was overwhelming." Accordingly, the court concluded that, in admitting this extrajudicial statement, the military judge erred in "balancing ... the probative value of [the] proffered evidence against the danger that it might be outweighed by undue prejudice," unpub. op. at 4, *see* Mil.R.Evid. 403, Manual for Courts-Martial, United

States, 1984, when he ruled in favor of admission.[1]

Nonetheless, the Court of Military Review concluded that appellant had not been prejudiced by this error

because the accused was being tried in a bench trial; the sentence was in line with that which the appellant (in his pretrial agreement) had agreed would not be excessive; the trial judge made a specific finding that he would not sentence the accused for the uncharged misconduct; and the sentence is no greater than that which would have been imposed had the error not been committed.

Unpub. op. at 4.

Earlier in its opinion, though, the court candidly acknowledged, "Had this evidence been presented to members for their deliberation we would be compelled to set aside the sentence." *Id.* Accordingly, it is clear that the court's conclusion of no prejudice depended upon the facts that (a) appellant had been sentenced by a military judge, rather than by members, and (b) the judge had specifically noted that he would not sentence the accused for the uncharged acts.

We believe, however, that in this case the Court of Military Review misconstrued the military judge's language:

In looking at the undue prejudice to it or the unfair prejudice, I find that I will not sentence the accused for the acts which were cited in the statement, other than the ones that were charged. So far as the uncharged acts are concerned, I will not sentence the accused for those acts. Therefore, there's no danger at this point of unfair prejudice to the accused. And my ruling is that the probative value, in explaining the seriousness of the charged offenses, indicating the emotional impact on the victim and the intent of the accused, outweighs any potential for unfair

prejudice to the accused, in that he would be sentenced for the uncharged acts.

The judge's assurance that he would not sentence appellant for his uncharged misconduct amounts to little more than an affirmation that he will not perform his sentencing duties in a lawless manner. With limited exceptions,[2] a judge may only impose a sentence based on the crimes of which the accused stands convicted. Moreover, a sentence based on other uncharged offenses would not be appropriate and so could not properly be affirmed under Article 66, UCMJ, 10 U.S.C. § 866.

If, as our dissenting Brother suggests, the military judge had stated that he would not "consider" the evidence of uncharged misconduct, the situation would be different and would be akin to that which exists when a judge becomes aware of evidence which he later rules inadmissible. However, as we understand the quoted language of the military judge—and contrary to the interpretation thereof in the dissent—the judge did not state he would disregard the evidence that he was admitting; and he did not assert that the sentence would not be increased by reason of the uncharged misconduct. Instead, he specifically admitted the evidence because of its "probative value, in explaining the seriousness of the charged offenses, indicating the emotional impact on the victim and the intent of the accused." Obviously, this ruling differs greatly from a determination to exclude evidence or to strike it after it has been initially admitted.

We have great confidence in military judges; and often we have assumed that, by reason of their legal training and experience, they are better able than court members to avoid prejudicial or improper use of inflammatory evidence. For example, this

---

1. In view of its ruling under Mil.R.Evid. 403, the court below did not consider whether the statement was admissible as evidence in aggravation under R.C.M. 1001(b)(4), Manual for Courts-Martial, United States, 1984; constituted impermissible hearsay; or violated appellant's right of confrontation. *Cf. United States v. Cordero,* 11 M.J. 210 (C.M.A.1981).

2. Under recidivist statutes, prior convictions sometimes may be taken into account to authorize a more severe maximum punishment. Also, if an accused himself requests that certain uncharged crimes be taken into account in sentencing, the judge may be entitled to consider them directly as a basis for imposing sentence.

assumption is often made as to evidence (a) that a judge says he will disregard entirely even though he has become aware of its contents; or (b) that he says he will consider only for a limited purpose.

Obviously, in the present case, the judge never said he would disregard the evidence entirely; indeed, his ruling was exactly to the contrary. Furthermore, his assurance that he would not sentence Kinman for certain uncharged misconduct might be construed as no more than a promise to act in a lawful manner in sentencing. However, even if the comment by the judge is taken as a commitment not to aggravate the sentence because of the uncharged offenses, we are unconvinced that appellant will escape prejudice.

The Court of Military Review acknowledged that, if the sentencing had been performed by court members, they would feel compelled to reverse because of the risk of prejudice. Even military judges are subject to some limitations in their ability to avoid prejudicial use of admitted evidence. If the military judge used the pretrial extrajudicial statement for the purposes that he mentioned, such as "explaining the seriousness of the charged offenses," it would be impossible for him not to consider it at the same time for prohibited purposes.[3]

The Court of Military Review also observed that the sentence adjudged was in line with what appellant had agreed in a pretrial agreement was not excessive. However, in military practice a pretrial agreement only sets a ceiling and does not constitute an affirmation by an accused that the sentence is appropriate. Indeed, the sentence provided in the agreement may only be the lowest ceiling that an accused can obtain in return for his guilty plea. Despite the guilty plea, an accused usually attempts to "beat the deal"; and a defense counsel has an obligation to try to induce the court-martial to adjudge a more lenient sentence than that prescribed in the pretrial agreement. Furthermore, unlike typical civilian practice, the military judge usually is not even informed of the sentence contained in the pretrial agreement, so that he may in no way be influenced by that agreement in seeking to adjudge an appropriate sentence.

Since the sentence set forth in the pretrial agreement is not inevitably the sentence that the court-martial imposes, some possibility exists that, even though at trial an appellant receives a sentence which is no more than that recited in the pretrial agreement, he still has been prejudiced by some type of trial error.[4] The test of prejudice is whether the sentence adjudged was "no greater than that which would have been imposed if the prejudicial error had not been committed." *United States v. Suzuki*, 20 M.J. 248, 249 (C.M.A.1985);

---

**3.** We note that the Court of Military Review rejected the evidence on the basis of Mil.R.Evid. 403, without ruling on the other grounds. If those other grounds are meritorious—as to which we need not rule—it would be improper to consider the "probative value" of the evidence.

**4.** Judge Cox in his dissenting opinion asserts: "Most certainly, *the error must be harmless* where, as here, the military judge sentenced the accused to a more lenient sentence than that agreed upon in his pretrial agreement. *See United States v. Hendon*, 6 M.J. 171, 175 (C.M.A. 1979)." 25 M.J. at 103. In a footnote following his citation to *Hendon*, Judge Cox writes: "I trust the majority does not intend to overrule this valuable precedent without even giving the Government an opportunity to brief and argue the issue." 25 M.J. at 103 n. 1. In truth, *Hendon* is not so ironclad in equating lack of

prejudice on the one hand and an adjudged sentence's comparison to a pretrial agreement on the other. In *Hendon*, this Court stated:

Absent evidence to the contrary, accused's own sentence proposal is a reasonable indication of its probable fairness to him. *United States v. Johnson*, 19 U.S.C.M.A. 49, 50, 41 C.M.R. 49, 50 (1969). Of course, the sentence factors that may be taken into account in connection with a pretrial plea agreement may be different from those before the court-martial. *See United States v. Villa*, 19 U.S.C.M.A. 564, 567, 42 C.M.R. 166, 169 (1970); *cf. United States v. Green, supra* [1 M.J. 453] at 454–55 [C.M.A.1976]. Also, a court-martial can legally, and we may perhaps judicially notice that, in practice, does, adjudge a sentence less than that provided in the pretrial agreement. *United States v. Villa, supra* at 569, 42 C.M.R. at 171 (Ferguson, J., dissenting).

6 M.J. at 175.

*see United States v. Sales*, 22 M.J. 305, 307 n. 3 (C.M.A.1986). When this test is applied to the evidence involved in this case—evidence that according to the Court of Military Review was improperly admitted—we are unconvinced that appellant suffered no prejudice.[5]

The decision of the United States Air Force Court of Military Review as to sentence is reversed; the sentence is set aside; the record of trial is returned to the Judge Advocate General of the Air Force. A rehearing on sentence may be ordered.

Judge SULLIVAN concurs.

COX, Judge (dissenting):

This case troubles me considerably. Appellant entered pleas of guilty to two sex-abuse offenses—his daughter was the victim. Prior to his pleas, he negotiated a plea bargain with the convening authority. He was tried by military judge alone. During the sentencing procedure, the judge admitted into evidence, over defense objection, a pretrial statement executed by the victim. The statement contained allegations about sexual misconduct more serious than those actually charged in the pleadings.

As the judge announced his sentence he said, among other things, the following:

I find that the statement certainly has probative value, because it ... indicates the emotional impact of the victim and the intent of the accused; and therefore, that's the probative value, in that it allows me to put everything—put the facts of the case into perspective. In looking at the undue prejudice to it or the unfair prejudice, I find that *I will not sentence the accused for the acts which were cited in the statement, other than the ones that were charged. So as far as the uncharged acts are concerned, I will not sentence the accused for those*

acts. *Therefore, there's no danger at this point of unfair prejudice to the accused.* And my ruling is that the probative value, in explaining the seriousness of the charged offenses, indicating the emotional impact on the victim and the intent of the accused, outweigh any potential for unfair prejudice to the accused ...

\*   \*   \*   \*   \*   \*

One thing that I did not state, in looking over my notes, I want to state that on my ruling *I feel it was necessary to view the uncharged misconduct, because looking at the charged acts, the uncharged acts indicate to me specifically what the victim interpreted the statements to mean.* In other words, the statement if she wanted to finish him off, without knowing the uncharged acts it would be difficult for me to insure that the victim knew that the accused was soliciting masturbation.

(Emphasis added.)

It goes without saying that, where the judge has decided not to consider evidence admitted over objection, the better practice, and indeed the correct practice, is to reverse the ruling as to admissibility and redact the objectionable parts. However, the military judge's failure to do so under the circumstances of this case does not, in my opinion, constitute reversible error. The judges of the Court of Military Review obviously view the matter as I do, having stated in their opinion:

The admission of evidence that the accused had ... forced his daughter, at age nine, to perform an act of fellatio ... [was] so repugnant that admission of that evidence in this case was error. ... We believe that the uncharged acts were so much more reprehensible than the acts charged that the danger the accused would be sentenced for the acts not

---

5. We find it unnecessary to consider in this case whether, by reason of the evidentiary error involved, it would be necessary for us to be convinced beyond a reasonable doubt of the absence of prejudice.

charged was overwhelming. *Had this evidence been presented to members for their deliberation we would be compelled to set aside the sentence. However, we find that in the instant case this error was not prejudicial to the substantial rights of the appellant because the accused was being tried in a bench trial; the sentence was in line with that which the appellant* (in his pretrial agreement) *had agreed would not be excessive; the trial judge made a specific finding that he would not sentence the accused for the uncharged misconduct; and the sentence is no greater than that which would have been imposed had the error not been committed.*

Unpub. op. at 4 (emphasis added).

Congress had to mean something by Article 59(a) of the Uniform Code of Military Justice, 10 U.S.C. § 859(a). Most certainly, an error must be harmless where, as here, the military judge sentenced the accused to a more lenient sentence than that agreed upon in his pretrial agreement. *See United States v. Hendon,* 6 M.J. 171, 175 (C.M.A.1979).[1]

| Under pretrial agreement sentence would not exceed: | The military judge sentenced him to: |
|---|---|
| Reduction to E-1; Confinement for 18 months; A dishonorable discharge; and Forfeitures which would not reduce the accused's monthly pay below $639.00. | Reduction to E-4; Confinement for 18 months; and A bad-conduct discharge |

The fact that the judge rendered a lesser sentence than that called for in the pretrial agreement confirms in my mind that when he said he would not sentence the accused on the uncharged acts, he kept his word. I see no prejudice here that would justify further delaying disposition[2] by reversing the decision of the Court of Military Review; setting aside the sentence; and returning the record to the Judge Advocate General with authority for a rehearing on sentence. Perhaps the evidence should not have been admitted, but its admission did not harm appellant.

What is the difference between:

(1) A judge who carefully considers evidence, listens to defense objections, and then rules the evidence *inadmissible;* and

(2) A judge who listens carefully to the evidence and then states on the record that he *will not consider it?*

1. I trust the majority does not intend to overrule this valuable precedent without even giving the Government an opportunity to brief and argue the issue. In *United States v. Hendon,* 6 M.J. 171, 174–75 (C.M.A.1979), this Court stated:

   Except for a somewhat longer period of confinement at hard labor, the adjudged sentence accorded with what the accused proposed to the convening authority when he initiated the negotiations that resulted in his pretrial agreement to plead guilty. Absent evidence to the contrary, accused's own sentence proposal is a reasonable indication of its probable fairness to him. ... Of course, the sentence factors that may be taken into account in connection with a pretrial plea agreement may be different from those before the court-martial. ... Also, a court-martial can legally, and we may perhaps judicially notice that, in practice, does, adjudge a sentence less than that provided in the pretrial agreement.

2. In a letter to this Court addressed March 12, 1987, appellant, in his own hand, requested that his appeal be withdrawn, pointing out:

   I have given this a lot of prayer and consideration. I feel this would be the best thing for the family. My daughter is married and starting a life and family of her own. My sentence is almost completed and all I want is to return to my family so I can support them. If the appeal continues the ... case will be brought back up, memories rekindled and anxieties and antagonisms brought to the surface again. I think the best thing would be to let justice run its course and build a stronger family relationship after my release. The only thing I will gain from the appeal would be to push my daughter further away from me by throwing everything back at her.

   I respectfully request my appeal be withdrawn, my sentence affirmed and my discharge processed so I can get on with my life. Even though, after receiving this correspondence, we ordered defense counsel to "confer with appellant" regarding his "decision to seek withdrawal," and counsel responded that "[a]ppellant ... [did] *not* wish to withdraw his petition," the tone of appellant's letter is such that any compassionate person cannot ignore the mental hardships he and his family would face if they had to undergo a rehearing. Also, in March 1987 his sentence was almost finished—by the time our decision is published, it very likely will be completed.

I believe the two are synonymous—saying "inadmissible" is the same as saying "not considered." In both instances, the record reflects that the judge did not base his findings on the objectionable evidence and did not consider it in sentencing. Without citation of authority, my learned colleagues are elevating form over substance.

I am in the minority because I believe that in order for a judge to make a considered ruling, he is entitled to know everything about the accused—*good* and *bad*. However, I sense the existence of an air of skepticism when it comes to trusting military judges. It often appears that questioning their integrity and ability to fairly administer their sentencing responsibilities is a prevalent attitude, a situation which I consider to be most unfortunate. Apparently the majority would prefer to have military judges perform their duties via what I call the "ostrich method" of sentencing. By "ostrich method," I mean: Our sentencing judges are supposed to stick their heads in the sand and pretend that they don't know what's obvious to everyone else concerned, *e.g.*, defense counsel; trial counsel; accused; convening authority; staff judge advocate; police investigators; the victims; members of the accused's command; the Article 32 investigating officer; and even the Courts of Military Review and this Court. It is no wonder that on occasion some or all of us do not fully understand a military judge's sentence. Personally, I have enough faith in military judges to trust them with the information, just as every other judge—in every other common-law jurisdiction—is trusted. Indeed, even those jurisdictions having sentencing guidelines permit judges access to all sorts of information to assist them in deciding whether mitigating or aggravating factors are present.

I also am troubled by the fact that the majority is deciding this case without legal precedent and is reversing a *negotiated* guilty-plea sentence. I would cite legal authority for them, but I just cannot find anything that says a military judge is *presumed* to consider evidence even though he says that he did not. Is a jury presumed to consider evidence even when a judge instructs them not to do so? I submit that they are given the benefit of the doubt and no less should be accorded to the legally trained professional who possesses the title "military judge."

There are some propositions of law that are just so obvious no one has ever felt the need to address them in writing. I suggest that one of these is: When a military judge says he has not considered evidence, or as herein, has stated that he "will not sentence the accused for ... [certain] acts," the very fact that he is a judge requires that he be presumed to be ethical and truthful.[3]

3. I am not trying to give a military judge sitting alone a way to "cop-out" on tough rulings. I am just trying to emphasize that in a trial without members, a distinction should be made between that evidence which *proves* elements of an offense or defense, and evidence which persuades the military judge as to what to believe or disbelieve. The former evidence must be carefully ruled upon; the latter can be viewed with a broader perspective, particularly as it pertains to the right of an accused to present exculpatory evidence. If the evidence is in the record, the accused certainly cannot complain.