UNITED STATES

v.

**Sergeant John D. SHARP, Jr., FR 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, United States Air Force.**

**ACM 27965.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 27 June 1989.

Decided 8 Nov. 1989.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Major George P. Clark.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Major Terry M. Petrie and Major Dixie A. Morrow.

Before BLOMMERS, KASTL and MURDOCK, Appellate Military Judges.

DECISION

KASTL, Senior Judge:

Citing *United States v. Kinman,* 25 M.J. 99 (C.M.A.1987), the appellant argues that it was prejudicial error for the military judge to fail to state affirmatively that he would disregard inadmissible allusions to cocaine use and distribution during his deliberations on sentence. We find no error and affirm.

Consonant with his pleas, the appellant was found guilty at a bench trial of four specifications of stealing funds, totalling approximately $14,000.00, from the Rhein-Main Consolidated Mess Complex while working as a part-time bartender. In a pre-trial agreement, the convening authority agreed to withdraw allegations of wrongful use and distribution of cocaine and agreed to "cap" confinement time in

return for a plea of guilty to the four larcenies.

During the presentencing portion of the trial, the defense sought to demonstrate that the appellant had rehabilitated himself, triumphing over substance abuse and a bad marriage; thus, the defense insisted, he did not need lengthy confinement.

One of the principal defense witnesses was the Substance Abuse Control Officer for the base, Captain Beeman. In response to defense questions, he identified himself as one who had expertise in drug abuse. He also referred to the appellant as "a substance abuser" who had "no business using any kind of legal or illegal substances, mind-altering." When asked by the defense what he knew about the appellant "facing these serious charges," Captain Beeman stated that "the charges of drugs came along during the course of the alcohol rehab program and we were aware of the charges."

In the appellant's unsworn statement, he indicated that after he had become depressed, someone introduced him to drugs. The colloquy continues:

[Civilian defense counsel]: And did you ever sell drugs for money?

A: Not for money.

Q: You shared them with people?

A: I shared with people, yes.

Q: You purchased them from other people.

A: Yes.

The civilian defense counsel continued to explore the same ground in his final argument on sentence:

[A] slightly older woman who's obviously manipulative took advantage of a nice guy and took advantage, and she imprisoned, or blackmailed, his love. She drove him, she tortured him, by using the money for other things, by being disloyal to him.

... he's going downhill, he's drinking. Then this gal introduces him to drugs. He's not selling them, he's not making anything. Drug-dependent, alcohol. It's tragic, Your Honor. The best years of his life that woman took and stole from him. Tragic.

... [the appellant] has demonstrated, Your Honor, in the last seven months that he is a decent person. And he's tried everything. He's tried to give back to the community: He took every nickel out of his pocket ... he went down to Social Actions, not only to help himself but to help other people; he helped [the Office of Special Investigations] along with some people with drugs and alcohol.

As we have indicated, a fair reading of the record reveals a consistent theme behind the able defense effort: *This appellant deserved a lenient sentence since he had successfully lifted himself from a failed marriage and was a recovered alcoholic and drug user.*

So far so good. However, once the two cocaine specifications had been withdrawn, the next mention of either drugs in general or cocaine in particular came from the prosecution, not the defense. The trial counsel broached the topic of substance abuse through a "did you know" question to a defense witness. That witness was the appellant's immediate rating official; he spoke highly of the appellant and suggested that the First Sergeant had deflated the witness's ratings on the appellant's current performance report. The prosecutor challenged the defense witness, asking whether high marks for performance, bearing and behavior, and supervision should go to a servicemember who had "stolen $12,000.00 to $14,000.000 over a period of a time, *who admitted that he distributed and used cocaine*" (emphasis supplied). Significantly, there was no defense objection.

■ At the outset, we find the "did you know" type of question employed here permissible, given the facts. Mil.R.Evid. 405(a). *See United States v. McEwen,* 26 M.J. 526 (A.F.C.M.R.1988); *see also United States v. Kitching,* 23 M.J. 601 (A.F.C.M.R. 1986) and Saltzburg, Schinasi & Schlueter, *Military Rules of Evidence Manual* (2d ed. 1986) 381–382. We find no error.

■ In the alternative, even assuming the "did you know" question somehow was improper, we would find a defense waiver

of any possible prosecution misstep. We believe it crystal-clear that the original and unwavering plan of the defense was to paint this appellant as a man who had conquered his past and picked himself up by his bootstraps. We are loath to permit the defense to complain now on appeal after this information was so clearly employed as part of trial defense strategy. *See generally United States v. Watkins*, 21 M.J. 208, 209 (C.M.A.1986).

We agree that once the two cocaine specifications were dismissed, the trial counsel was the first to bring up the subject of drugs, cocaine or otherwise. However, we are confident that he was simply anticipating what all the participants knew to be the defense theory as to sentence.[1] Therefore, upon this alternative rationale, we would in any event find a clearcut defense waiver to mention of any drug-related misconduct. Mil.R.Evid. 103(a)(1). *See United States v. Tolppa*, 25 M.J. 352 (C.M.A.1987); *United States v. Thomas*, 26 M.J. 735 (A.C.M.R. 1988).

The appellant has cited *United States v. Kinman* as some sort of judicial abracadabra to win him sentence reassessment. We read *Kinman* and the follow-on cases far more narrowly. The rule announced there involves relatively rare situations where the military judge: (a) makes a valid ruling on a matter before the court; but then (b)

virtually impeaches his earlier stand by indicating he might utilize the challenged data on sentencing. When such an eventuality occurs, a self-serving statement that the judge will follow the law rings hollow, amounting "to little more than an affirmation that he will not perform his sentencing duties in a lawless manner." *United States v. Kinman*, 25 M.J. at 100.

In *Kinman*, the judge made a specific finding that he would not consider uncharged misconduct; however, he then clouded the picture, stating that he found the data probative "in explaining the seriousness of the charged offenses, indicating the emotional impact on the victim and the intent of the accused." This skewed the situation far beyond the routine case where a military judge simply determines to exclude evidence. In *Kinman*, unfortunately, "the judge never said he would disregard the evidence entirely." *United States v. Kinman*, 25 M.J. at 100–101. *See also United States v. Brown*, 28 M.J. 470, 473–473 (C.M.A.1989) and *United States v. Neil*, 25 M.J. 798, 801 (A.C.M.R.1988).

 In the present case, unlike *Kinman*, we do not address a situation where the military judge was obliged to affirmatively state that he would ignore the information in regard to increasing the sentence.[2]

---

1. In a similar vein, the civilian defense counsel characterized a dispute over an unrelated prosecution exhibit as requiring no objection "since it's judge alone … I'm sure the military judge will take the testimony as it is." We surmise that one might well say the same thing about the prosecution comments as to cocaine.

2. We have decided this case on the basis of either an acceptable prosecution question under Mil.R.Evid. 405(a) or waiver. As to waiver, however, a footnote in *United States v. Brown*, 28 M.J. 470, 474 n. 2 (C.M.A.1989), gives us some concern. *Brown* involved otherwise-inadmissible information that the appellant had been in a fight. The military judge in *Brown* did not explicitly state that he would ignore that conduct in his sentencing deliberations. Applying *United States v. Kinman*, 25 M.J. 99 (C.M.A. 1987), the Court of Military Appeals reversed and remanded. Of particular significance to our analysis is the fact that defense counsel "did not expressly renew his earlier successful objection to the evidence" in question. *United States v. Brown*, 28 M.J. at 474.

Using the *Brown* observation as authority, it is possible to assert that the defense need not specifically object to trigger the *Kinman* requirement. In view of our analysis that *Kinman* was not triggered in the first place, we need not decide this matter. Finally, even assuming error by the military judge in failing to definitely state that he would ignore unobjected-to drug-related conduct when deciding upon the sentence, we unhesitatingly would find such sentence nonetheless appropriate under *United States v. Sales*, 22 M.J. 305, 309 (C.M.A.1986). The sentence announced by the military judge (which was less than the "cap" agreed upon with the convening authority) was a bad conduct discharge, confinement for 18 months, forfeitures of $460.00 per month for 18 months, and reduction to airman basic. We consider the sentence adjudged appropriate—even lenient— in light of the evidence revealed in the record regarding the charged offenses. Accordingly, we would find that the sentence was not affected by the challenged matter in question. *United States v. Sales*, 22 M.J. at 309.

The findings of guilty and the sentence are correct in fact and law and, upon the basis of the entire record, are

AFFIRMED.

Senior Judge BLOMMERS and Judge MURDOCK concur.