*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

_____

## UNITED STATES
Appellee

**v.**

## Monica R. ARROYO, Senior Airman
United States Air Force, Appellant

**No. 24-0212**
Crim. App. No. 40321

Argued February 25, 2025—Decided August 19, 2025

Military Judges: Christopher D. James (arraignment and pretrial motions) and Thomas A. Smith (trial)

For Appellant: *Major Heather M. Bruha* (argued); *Lieutenant Colonel Allen S. Abrams.*

For Appellee: *Captain Kate E. Lee* (argued); *Colonel Matthew D. Talcott, Lieutenant Colonel Jenny A. Liabenow,* and *Mary Ellen Payne,* Esq. (on brief).

Amicus Curiae in Support of Appellee: *Captain Aaron D. Sanders* and *Devon A. R. Wells,* Esq. (on brief).

Judge HARDY delivered the opinion of the Court, in which Chief Judge OHLSON, Judge SPARKS, Judge MAGGS, and Judge JOHNSON joined.

_____

Judge HARDY delivered the opinion of the Court.

In this case, Appellant entered into a negotiated plea agreement, voluntarily pleading guilty to assault consummated by a battery and accepting a bad-conduct discharge and a minimum confinement of fourteen days in exchange for the dismissal of sexual assault charges that carried the potential for a dishonorable discharge, decades of confinement, and mandatory sex offender registration. The United States Air Force Court of Criminal Appeals (AFCCA), in assessing the appropriateness of Appellant's sentence, acknowledged this bargained-for benefit, noting that the agreement "reduced Appellant's criminal exposure" and ensured that Appellant "would not be exposed to additional significant collateral consequences that were possible under the dismissed specifications." *United States v. Arroyo*, No. ACM 40321 (f rev), 2024 CCA LEXIS 242, at *30, 2024 WL 3045505, at *10 (A.F. Ct. Crim. App. June 18, 2024) (unpublished).

We granted review to decide whether the AFCCA erred by recognizing the benefit Appellant received from her plea agreement when reviewing the appropriateness of her sentence. *United States v. Arroyo*, 85 M.J. 188 (C.A.A.F. 2024) (order granting review). An accused's own sentence proposal is a reasonable indication of the sentence's probable fairness to the accused. Accordingly, the AFCCA may—to ascertain the fairness and thus the appropriateness of an adjudged sentence—consider the context in which the parties reached the plea agreement, including the benefits from that agreement to the accused. We therefore affirm the decision of the AFCCA.

## I. Background

At the time of her offense, Appellant was a senior airman in the United States Air Force stationed at Tinker Air Force Base, Oklahoma. On December 31, 2020, Appellant attended a New Year's Eve party hosted at the off-base residence of a fellow senior airman. The gathering included six airmen, all from the same squadron, some of whom, including the victim, Airman First Class (A1C) LP, were

junior in rank to Appellant. Allegations of misconduct at the gathering led the Government to charge Appellant with two specifications of sexual assault in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2018).

Prior to trial, the parties jointly presented to the military judge an Offer for Plea Agreement. Under the proposed agreement and as relevant here, Appellant offered to plead not guilty to the two specifications of sexual assault, but to plead guilty to an additional charge and specification of assault consummated by a battery in violation of Article 128, UCMJ, 10 U.S.C. § 928 (2018), to be preferred and referred by the convening authority. Appellant also offered to enter into a stipulation of fact supporting the new assault charge, to refrain from objecting to the stipulation's use during the guilty plea inquiry or sentencing proceedings, and to accept a sentence that included at least fourteen days of confinement and a bad-conduct discharge. In exchange, the convening authority agreed to withdraw and dismiss the two specifications of sexual assault upon A1C LP, and to move to dismiss those offenses with prejudice after the announcement of Appellant's sentence.

During the plea colloquy, the military judge confirmed that Appellant fully understood the agreement's consequences, including a bad-conduct discharge's stigma, its impact on employment and educational opportunities, and the resulting loss of military benefits. The military judge also confirmed that Appellant had thoroughly discussed the decision with defense counsel. At the conclusion of this inquiry, the military judge asked Appellant whether it was her "express desire to be discharged from the service with a bad conduct discharge," and she confirmed that it was. Finding the plea agreement legally sound, the military judge accepted it.

In the stipulation of fact, Appellant agreed that she committed an offensive touching and did bodily harm to A1C LP by intentionally touching her on the leg without legal justification or A1C LP's consent. During the *Care*

inquiry,[1] Appellant further explained why she believed she was guilty of violating Article 128, UCMJ:

> [A1C LP] had not told me she was comfortable with physical contact and I had not seen anyone else touch [A1C LP] that night. I knew it was offensive because she had not acted in any manner that indicated to me that she wanted to be touched. She did not ask me to touch her leg, I did not ask her before I touched her leg, and she had not previously given me permission to touch her leg.
>
> The setting was not one that would typically involve physical contact and it was not part of a game or sporting event. I have no excuse for my behavior.

The military judge accepted Appellant's plea and found her guilty of one specification of assault consummated by a battery in violation of Article 128, UCMJ.

During sentencing, the Government requested that Appellant be sentenced to a reduction in rank, two months of confinement, and a bad-conduct discharge. The Government argued that a bad-conduct discharge was warranted because Appellant "deserve[d] that sort of punishment, that lifelong punishment for her actions." Defense counsel requested that Appellant receive only fourteen days of confinement and a bad-conduct discharge, describing this sentence as "significant punishment and deterrence" that would send a compelling message. The military judge sentenced Appellant to a bad-conduct discharge, thirty-seven days of confinement, and a reduction in grade to E-2.

Consistent with the plea agreement, the Government then moved to dismiss with prejudice the two specifications of sexual assault under Article 120, UCMJ. In the absence of any objection from Appellant, the military judge granted

---

[1] *United States v. Care*, 18 C.M.A. 535, 40 C.M.R. 247 (1969).

the motion. The convening authority took no action regarding the findings or sentence.[2]

On appeal before the AFCCA, Appellant argued that a bad-conduct discharge was an inappropriately severe sentence for the single specification of assault consummated by a battery to which Appellant pleaded guilty. *Arroyo*, 2024 CCA LEXIS 242, at *3-4, 2024 WL 3045505, at *1. In addressing this argument, the AFCCA began by reviewing the plea agreement, the military judge's *Care* inquiry, and the parties' sentencing arguments. *Id.* at *22-27, 2024 WL 3045505, at *7-9. Then, after reviewing the appropriate underlying law, the AFCCA announced: "After conducting a thorough review of the entire record, specifically considering the Appellant, the nature and seriousness of the offense, Appellant's record of service, and all matters contained in the record of trial, we find Appellant's sentence is inappropriately severe and provide appropriate relief." *Id.* at *29, 2024 WL 3045505, at *9. However, the AFCCA declined to set aside the bad-conduct discharge, and instead reduced Appellant's term of confinement from thirty-seven to fourteen days and affirmed the bad-conduct discharge and the reduction to the grade of E-2.[3] *Id.* at *31-32, 2024 WL 3045505, at *10-11.

The AFCCA then offered the following explanation:

---

[2] Before the convening authority's final decision in Appellant's case, the AFCCA had remanded the case back to the Chief Trial Judge, Air Force Trial Judiciary, to provide Appellant an opportunity to rebut statements made by the victim in a letter sent to the convening authority in response to Appellant's clemency request. *United States v. Arroyo*, No. ACM 40321, 2023 CCA LEXIS 358, at *7-8, 2023 WL 5501538, at *3 (A.F. Ct. Crim. App. Aug. 25, 2023) (unpublished).

[3] Judge Ramirez dissented in part disagreeing with the appropriateness of the bad-conduct discharge. *Arroyo*, 2024 CCA LEXIS 242, at *32-33, 2024 WL 3045505, at *11 (Ramirez, J., concurring in part and dissenting in part). He stressed that Appellant's conviction stemmed solely from touching A1C LP's leg at a party and that the record lacked details on the nature or severity of the contact. *Id.* at *36-37, 2024 WL 3045505, at *12.

Here, Appellant, consistent with her pleas, was found guilty of assaulting another Air Force member at a New Year's Eve party. The assault occurred after the victim had been drinking and in the presence of Appellant's peers and subordinates. We note that Appellant did not provide any extenuating circumstances for touching LP on the leg during her guilty plea inquiry or through any evidence admitted at sentencing. The record also suggests that Appellant's conduct impacted LP in a negative way and that she now finds it difficult to trust other people.

*Id.* at \*29, 2024 WL 3045505, at \*10.

Importantly, the AFCCA then offered the following additional observation, which forms the basis for Appellant's appeal:

It is also worth noting in this case that Appellant, with the assistance of competent counsel, negotiated and secured a plea agreement, where she received the benefit of having two specifications of sexual assault withdrawn and dismissed with prejudice, in exchange for her plea of guilty to a separate offense. *This benefit not only reduced Appellant's criminal exposure, but it also ensured Appellant would not be exposed to additional significant collateral consequences that were possible under the dismissed specifications.* In exchange for this benefit, Appellant agreed to a minimum punishment that would include at least 14 days of confinement and a bad-conduct discharge.

*Id.* at \*29-30, 2024 WL 3045505, at \*10 (emphasis added).

## II. Standard of Review

Congress has dictated that the service courts "may affirm only . . . the sentence or such part or amount of the sentence, as the Court finds correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1) (2018).[4] "[I]t is a 'settled premise' that in exercising this

---

[4] In 2021, Congress passed the National Defense Authorization Act for Fiscal Year 2022, Pub. L. No. 117-81, § 539E(d), 135

statutory mandate, a CCA has discretion to approve only that part of a sentence that it finds 'should be approved,' even if the sentence is 'correct' as a matter of law." *United States v. Kelly*, 77 M.J. 404, 406 (C.A.A.F. 2018) (quoting *States v. Nerad*, 69 M.J. 138, 142 (C.A.A.F. 2010)). This Court has described the service courts' authority to conduct sentence appropriateness as an "awesome, plenary, *de novo* power of review." *Id.* (internal quotation marks omitted) (quoting *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)).

Congress declined to grant this Court the same authority, so our review of a service court's decision on sentence appropriateness is limited to the narrow question of whether there has been an obvious miscarriage of justice or an abuse of discretion. *United States v. Swisher*, 85 M.J. 1, 4 (C.A.A.F. 2024). Service courts abuse their discretion when they act arbitrarily, capriciously, or unreasonably as a matter of law. *United States v. Flores*, 84 M.J. 277, 282 (C.A.A.F. 2024).

## III. Discussion

Appellant argues that the AFCCA abused its discretion in two ways when it reviewed the appropriateness of her sentence. First, Appellant asserts that the AFCCA violated her constitutional right to a presumption of innocence by considering the benefit that Appellant received when the Government withdrew the two specifications of sexual assault. Second, Appellant argues that the AFCCA erred by comparing the severity of her adjudged sentence to the maximum punishment that she could have received had she been convicted of the two withdrawn sexual assault specifications. We disagree with both assertions.

---

Stat. 1541, 1703 (2021), which replaced this provision with new language describing the service courts' authority to review sentence appropriateness. Because those amendments do not apply to this case, we express no opinion about whether or how they might affect this Court's sentence-appropriateness review jurisprudence.

Underlying both of Appellant's arguments is a threshold premise that the AFCCA could not—while performing its sentence appropriateness review—legally recognize the existence of the plea agreement between Appellant and the Government. Although we agree that a service court *could* err by improperly using a plea agreement during its sentence appropriateness review (as Appellant suggests in her assigned issues before this Court), we do not agree that the AFCCA was prohibited from acknowledging the plea agreement's existence or discussing the context in which the parties reached the agreement. As Appellant concedes in her brief, this Court has long recognized that, "[a]bsent evidence to the contrary, [an] accused's own sentence proposal is a reasonable indication of its probable fairness to [her]." *United States v. Hendon*, 6 M.J. 171, 175 (C.M.A. 1979) (plurality opinion) (citing *United States v. Johnson*, 19 C.M.A. 49, 40, 41 C.M.R. 49, 50 (1969)). Accordingly, the AFCCA did not err merely by discussing the plea agreement while performing its sentence appropriateness review.

But that does not necessarily resolve Appellant's arguments about how the plea agreement factored into the AFCCA's analysis. Appellant argues that the AFCCA improperly and unconstitutionally presumed her guilt on the dismissed offenses when it noted that the plea agreement not only "reduced Appellant's criminal exposure, but it also ensured Appellant would not be exposed to additional significant collateral consequences that were possible under the dismissed specifications." *Arroyo*, 2024 CCA LEXIS 242, at *30, 2024 WL 3045505, at *10. In Appellant's view, this language demonstrates that the AFCCA implicitly presumed Appellant would have been found guilty of the sexual assault specifications and improperly compared her adjudged sentence to the sentence she would have received if she was convicted of sexual assault. We disagree.

As noted above, the sentence agreed to by Appellant in the plea agreement is a reasonable—but not dispositive—indication of the sentence's fairness to Appellant. *Hendon*, 6 M.J. at 175. Because the service courts conduct sentence

appropriateness review de novo, the AFCCA had a duty to determine on its own whether the sentence agreed to by the parties is appropriate. To make that determination, the AFCCA may evaluate the context in which the plea agreement arose, to understand why the parties—including Appellant—believed that the agreed-upon sentence was fair.

In our view, the AFCCA did nothing more in its analysis than acknowledge the factors that led the Government and Appellant to agree that Appellant should be sentenced to a bad-conduct discharge. The Supreme Court has long recognized that guilty pleas and plea agreements "are important components of this country's criminal justice system" that, when properly administered, "can benefit all concerned." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977).[5] The potential benefits for the accused include the ability to avoid "the anxieties and uncertainties of a trial," *id*., which in this case included the possibility of being found guilty of two specifications of sexual assault in violation of Article 120, UCMJ.

By bargaining to have those charges withdrawn and dismissed and pleading guilty to assault consummated by a battery, the AFCCA is correct that Appellant significantly reduced her maximum potential punishment. Appellant originally faced up to sixty years of confinement and a dishonorable discharge, *Manual for Courts-Martial, United States* pt. IV, para. 60.d.(2) (2019 ed.) (*MCM*), but the plea agreement capped Appellant's maximum sentence at six months of confinement and a bad-conduct discharge, *MCM* pt. IV, para. 77.d.(2)(a). The AFCCA was also correct that the plea agreement eliminated the possibility that Appellant would face the significant collateral consequence of qualifying as a sex offender. The AFCCA's recognition of

---

[5] *See also United States v. Furth*, 81 M.J. 114, 117-18 (C.A.A.F. 2021) (observing that a plea agreement "significantly limited sentencing exposure" where an appellant's agreement "protected him from convictions for desertion and larceny"); *United States v. Bradley*, 71 M.J. 13, 17 (C.A.A.F. 2012) (acknowledging that an appellant's plea agreement allowed him to avoid a possible life sentence).

these benefits in assessing *why* Appellant agreed to the terms of the plea agreement was entirely proper as part of the AFCCA's de novo determination of whether the punishment dictated by the plea agreement and imposed by the military judge was appropriate.

To be clear, we do not suggest that it would be impossible for a service court to violate an appellant's presumption of innocence when performing sentence appropriateness review or to improperly compare an adjudged sentence to a theoretical maximum sentence from withdrawn specifications. But nothing in the AFCCA's opinion suggests that it presumed Appellant committed the sexual assaults or used the dismissed charges to justify a harsher sentence than it would otherwise have approved as appropriate. At most, the AFCCA considered why Appellant agreed that a bad-conduct discharge was a fair punishment for her assault of A1C LP. Because the existence of a plea agreement is a material consideration in a service court's sentence appropriateness review under *Hendon*, the AFCCA did not abuse its discretion when it acknowledged the benefits Appellant received under the plea agreement.

## IV. Conclusion

The decision of the United States Air Force Court of Criminal Appeals is affirmed.