**UNITED STATES**

v.

**Technical Sergeant Mark W. DUFFEY, FR585–08–4851 United States Air Force.**

**ACM 29528.**

U.S. Air Force Court of Military Review.

7 April 1993.

Appellate Counsel for the Appellant: Colonel Jeffrey R. Owens and Captain Michael D. Burt.

Appellate Counsel for the United States: Lieutenant Colonel Brenda J. Hollis, Major Paul H. Blackwell, Jr., and Major Jeffrey C. Lindquist.

Before O'HAIR, SNYDER, and GRUNICK, Appellate Military Judges.

## OPINION OF THE COURT

SNYDER, Judge:

When is silence golden, or simply fraud? In this case we find it was fraud.

Tried by a military judge sitting as a general court-martial, appellant was convicted, in accordance with his negotiated pleas, of larceny of over $3800, attempted larceny of over $1700, making a false official statement, and obstructing justice.[1] He was sentenced to a bad-conduct discharge, 30 months confinement, forfeiture of $350 pay per month for 30 months, and reduction to E–1. The convening authority limited the reduction to E–2 to comply with the pretrial agreement (PTA), but otherwise approved the sentence as adjudged.

Appellant raises four assignments of error. Although none of them merit relief, some discussion is appropriate.

### I.

Appellant asserts his pleas to the two specifications of larceny (Charge I) are improvident because the record fails to demonstrate a factual basis for his pleas and because appellant's responses during the *Care* inquiry, *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969), set up matter inconsistent with his pleas.[2] We disagree.

1. In violation of Articles 121, 80, 107, and 134, UCMJ, 10 U.S.C. §§ 921, 880, 907, and 934 (1988).

2. Interestingly, appellant does not attack the providency of his pleas to Charge II and its specification, which charges attempted larceny. The only factual difference is his being thwarted by the discovery of his ruse, which was the same ongoing misrepresentation for the larcenies of Charge I and its two specifications.

The specific basis of appellant's averment is, because he made no false representation at the time he received the monies in question, the evidence demonstrates he lacked the necessary intent to steal or otherwise wrongfully deprive the owners of the funds. The essential facts of this sad caper reflect appellant was assigned to a unit located at Keflavik Naval Air Station, Iceland. While on leave in the United States, appellant called his unit and, as he requested, received a leave extension because his daughter was undergoing chemotherapy for leukemia. Upon returning to his unit, appellant related the chemotherapy had proved ineffective and his daughter's life expectancy was estimated at about 18 months. As a result, he said he took her to Dallas, Texas for experimental treatment which cost $30,000, and he had expended his life's savings on her treatment. Appellant also related that, because the treatment was experimental, it was not covered by the Civilian Health and Medical Plan For The Uniformed Services (CHAMPUS).[3]

As word of appellant's "plight" spread around his unit, he was approached and asked if he would have any problem with accepting funds which might be raised to assist him. After some hesitancy, appellant advised he would not. Soon, the cause for appellant's daughter was taken on by the entire installation, including his Navy and Marine cohorts. On two occasions appellant was presented with the proceeds of the fund raising events to assist him with the costs of his daughter's medical treatment. After appellant's reassignment to Kirtland AFB, New Mexico, the European Stars and Stripes published an article on the many fund raising efforts by the Kefla-

3. The health care insurance plan for dependents of active duty and retired personnel and retired personnel who do not have access to military medical care and facilities. The basic part of the plan provides for CHAMPUS defraying 75% of approved medical expenses, with the beneficiary paying the remainder.

vik community on behalf of appellant's daughter. The Stars and Stripes article, however, proved to be the beginning of the end. After appellant's sister read the article, called other family members out of concern and learned appellant's daughter did not have leukemia, she called his former unit attempting to reach him. During her call, she told appellant's former unit there must be some mistake, for the daughter was not ill.

After arriving at Kirtland AFB, New Mexico, appellant called his old unit to provide a forwarding address for any additional funds which might be raised. By this time, Keflavik authorities had learned appellant's story was false in its entirety and launched an investigation.

■ Appellant argues his pleas to the larcenies are improvident because he did not make the false statement regarding his daughter's illness for the purpose of financial gain.[4] When faced with the unexpected prospect of the fund raisers, he was too embarrassed to reveal the truth and felt "forced" to take the money. Because he never repeated the story when accepting the money, appellant argues there was no false representation at the time he accepted the funds. In essence, appellant asserts it was the donors' desire to do good which moved them to part with the funds and not his misrepresentation. He argues his actions may have been unethical, but not criminal. We find this argument unpersuasive.

■ We agree with appellant that his guilt must be established on the basis of a wrongful taking or obtaining, rather than a wrongful withholding. *United States v. Dean*, 33 M.J. 505 (A.F.C.M.R.1991). The MCM defines "False Pretense" as follows:

> The false pretense may be made by means of any act, word, symbol, or token. The pretense must be in fact false when made and when the property is obtained, and it must be knowingly false in the sense that it is made without a

belief in its truth. A false pretense is a false representation of past or existing fact.... Although the pretense need not be the sole cause inducing the owner to part with the property, it must be an effective and intentional cause of the obtaining....

MCM, Part IV, paragraph 46c(1)(e) (1984). That silence may, under appropriate circumstances, constitute a false misrepresentation is not a novel theory. *See Dean*, 33 M.J. at 510 and authorities cited therein; *United States v. Flowerday*, 28 M.J. 705 (A.F.C.M.R.1989); *United States v. Rodriguez*, 24 C.M.R. 687, 690 (A.F.B.R.1957); *see also United States v. Vorda*, 34 M.J. 725, 726 (N.M.C.M.R.1991). The very scenario used by appellant is anticipated in *Dean*, where we stated:

> A false pretense may occur through silence or failure to correct a known misrepresentation. (Citation omitted.) An individual who knows he is obtaining money by reason of a prior statement that now misrepresents a fact, and who receives that money with intent to take advantage of the other party's reliance upon the misrepresented fact wrongfully obtains the money. (Citation omitted.) His silence, with full knowledge of what is happening, is equivalent to a repetition of the statement at the very moment of acquisition of the money. (Citation omitted.)

*Dean*, 33 M.J. at 510. Appellant admitted in his plea inquiry that he was aware at all times that his benefactors were acting in reliance on his prior lie about his daughter's health, and this false pretense was repeated, via his silence, each time he received the funds. Whatever appellant's motive may have been is irrelevant, for his *intent* was clear and admitted by him. *See United States v. Johnson*, 24 M.J. 101, 106 (C.M.A.1987). Appellant's pleas to the larcenies were provident and will stand.

---

4. Appellant was not charged with making a false official statement when he requested the leave extension. The false official statement charged was his falsely stating his need to install special medical fixtures in his home to accommodate his daughter. It was made by appellant to justify an application for advance pay.

## II.

Appellant also claims ineffective assistance of counsel. The ineffectiveness he complains of is: his trial defense counsel failed to contact the previously requested and appointed defense expert consultant. We find no merit in this assertion. Defense counsel's failure did not render appellant's representation ineffective.

■ Appellant received an inquiry into his mental capacity and responsibility pursuant to Rule for Courts–Martial (R.C.M.) 706(c)(3). To address a question he had regarding the inquiry board's thoroughness, individual defense counsel requested a locally assigned psychologist, Major T, be appointed as a consultant.[5] The convening authority approved this request, and appellant's first detailed defense counsel[6] was provided the letter of approval. Major T was orally alerted by the government to anticipate appointment and contact by the defense. Amid the confusion of the first detailed defense counsel's reassignment and his replacement's assumption of duty with no overlap, the subject of the consultant was never discussed with substitute counsel. Further, individual defense counsel did not inquire of detailed counsel regarding the status of the consultant. As a result, when they attempted to contact Major T, he was on leave which extended beyond the trial date.

We find this issue was tactically waived at trial in its entirety with the knowing consent of appellant.

At trial, individual defense counsel requested to place certain matters on the record regarding the consultant and his decision not to request a delay until Major T's return from leave. He advised the trial judge he had considered requesting a delay in order to consult with Major T. During this period, however, the convening author-

ity's staff judge advocate advised him that a delay probably would lead to the convening authority withdrawing from the PTA. After assuring the trial judge appellant's mental capacity or responsibility was not in issue, and that the most he hoped to gain was perhaps additional insight for the sentencing stage of trial, individual defense counsel related he was foregoing a possible delay to retain the benefits of the PTA.

MJ: So, at this point in time, it is your belief that sanity is not a significant factor at this trial?

IDC: Yes, Your Honor.

MJ: Is it also your belief, based upon your review of the full report which only you have access to, that Sergeant Duffey was given access to a competent psychiatrist or sanity board, and that they conducted an appropriate examination and evaluation?

IDC: Within the limits of my knowledge, yes, Your Honor. I have no objection to the personnel or the way it appears to have been conducted.

MJ: Based upon the information presented to me by the defense counsel in answer to my questions, I find that the accused appears to have the capacity to stand trial by a court-martial and that they believe that the first and only sanity board was conducted by a competent medical team and an appropriate examination and evaluation was conducted; therefore, mental responsibility is not an issue and does not have to be pursued further by this Court on its own motion.

\*  \*  \*  \*  \*  \*

MJ: Sergeant Duffey, do you agree with your defense counsel not to make a motion for appropriate relief asking for a sanity board?

Acc: Yes, sir, I do.

---

**5.** This issue arose because individual defense counsel received information that, during the inquiry, appellant may have been mistakenly advised of his right against self-incrimination pursuant to Article 31, UCMJ, 10 U.S.C. § 831 (1988) and Mil.R.Evid. 305. If so advised, the advisement could have impacted the degree of cooperation appellant was willing to extend to the board. There was no finding of fact appellant was advised of his rights. The trial judge

reminded counsel his offerings for the record were not evidence, and counsel declined to make a motion and present relevant evidence.

**6.** Appellant consented to this counsel's release and entered into an attorney-client relationship with the area defense counsel who was detailed defense counsel at trial.

MJ: Do you request a continuance for the purpose of using Major [T] or some other psychologist as an expert consultant for the defense?

Acc: No, sir.

\* \* \* \* \* \*

MJ: Understanding all of that, do you agree with what your defense counsel has said, and that is, in your opinion, it's not a significant issue in this case?

Acc: Yes, sir.

We find no basis in the record to negate defense counsel's tactical waiver of the use of Major T. The fact that the defense's laches caused the issue of a possible delay does not preclude a waiver. Further, neither did the convening authority's position on the PTA impact the viability of the waiver. At the time the convening authority expressed an inclination to withdraw from the PTA, he had the right to withdraw, for there had not been any detrimental reliance by appellant. R.C.M. 705(d)(5)(B); *United States v. Manley*, 25 M.J. 346 (C.M.A.1987); *Shepardson v. Roberts*, 14 M.J. 354 (C.M.A.1983). Generally, expeditious disposition of the trial is viewed as a key part of the consideration flowing to the government for a PTA, and a convening authority does not commit an impropriety by insisting on proceeding without delay as a condition to remaining a party to the PTA. This in no way constitutes an attempt to orchestrate the proceedings. *See United States v. Gibson*, 29 M.J. 379 (C.M.A.1990); *United States v. Jones*, 23 M.J. 305 (C.M.A.1987).

If an accused can propose and agree to forego certain legal motions or issues in order to obtain a PTA, we see no reason to preclude an accused from foregoing or waiving similar motions or issues in order to *preserve* a PTA, as long as it is the accused's and counsel's unfettered decision to do so. Where the government has not played any part in creating the condition which gives rise to a possible delay, concern that the convening authority will withdraw from an existing agreement in the event of a delay does not vitiate the voluntariness of a decision not to seek a delay. The accused retains the right to a fully litigated trial in the absence of the PTA. *Jones*, 23 M.J. at 309 (Cox, J., concurring). Therefore, in the absence of evidence the convening authority or an authorized representative attempted to improperly orchestrate the proceedings, an accused should not expect appellate relief from decisions made to preserve a PTA and its benefits.[7]

As reflected above, prior to accepting defense counsel's waiver, the trial judge queried appellant regarding his understanding of and agreement with proceeding in order to retain the benefit of his PTA. Appellant fully concurred with his counsel and expressed satisfaction with the results of his inquiry board. The trial judge satisfied himself there was no evidence of a lack of mental capacity of appellant and made a finding to that effect. We find no basis to disturb that finding.

Even were we to find no waiver, we find counsel were not ineffective in their representation, their failure to contact Major T notwithstanding. Effectiveness of counsel is determined by reviewing counsel's entire performance during the proceedings, and not necessarily by focusing on one particular decision or event regarding the case. It is only when counsel's performance is deficient, and the deficiency is so serious that it deprived an accused of a fair trial, a trial whose result is reliable, that counsel's performance will be deemed ineffective. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Because of the multitude of decisions and actions required of defense counsel, the latitude accorded counsel is wide, and competency is presumed. Appellant has the burden of first establishing the claimed deficiency, and then showing the reasonable probability that, absent the deficiency, the result

---

7. In his affidavit, individual defense counsel takes offense at the convening authority's desire for the trial to proceed without further delay. However, we read his "offerings for the record" as providing a reasonable basis for his tactical decision not to request a delay, and not as an attempt to retain the benefits of the PTA while seeding hope for appellate relief from his decision. Counsel must bear in mind that a PTA is not a right.

would have been different. *Strickland,* 466 U.S. at 693–94, 104 S.Ct. at 2067–68.

One of the core elements of the *Strickland* test is that the test does not involve hindsight, and tactical decisions will not be second guessed on appeal. 466 U.S. at 688–91. *See also United States v. Scott,* 24 M.J. 186 (C.M.A.1987). Although investigation and preparation are integral parts of rendering effective representation, *Scott,* 24 M.J. at 188, counsel can reasonably make a tactical decision either not to investigate or cease further investigation.

> Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066; *accord Scott,* 24 M.J. at 188.

 In the instant case, appellant was evaluated by a three-person inquiry board which concluded appellant had a personality disorder, but no mental disease or defect. Individual defense counsel informed the trial judge he had no objection to the constitution of the board or the manner in which it was conducted, his initial inquiry notwithstanding. Further, appellant was evaluated by a civilian counselling expert, Dr. W, who also testified in his behalf during the sentencing stage of the trial. Dr. W essentially concurred with the ultimate diagnosis of the board. He testified appellant would benefit from psychotherapy, but he certainly was not in need of any type inpatient treatment.[8]

We find individual defense counsel's tactical decision not to request a delay for consultation with the psychological consultant to have been made on a reasonably preparatory basis. There is no need to proceed to the prejudice prong of the *Strickland* test.

8. In a post-trial submission, Dr. W states appellant should receive another evaluation. This,

### III.

We accept the trial judge's findings and ruling on the motion of multiplicity for sentencing. The offenses are separate for sentencing purposes. After giving individualized consideration to appellant and his sentence, we do not find the sentence inappropriately severe. Article 66(c), 10 U.S.C. § 866(c).

The findings and sentence are correct in law and fact, and, on the basis of the entire record, are hereby,

AFFIRMED.

Senior Judge O'HAIR and Judge GRUNICK concur.

however, is clearly at odds with his testimony at trial.