UNITED STATES

v.

**Lieutenant Colonel William H. ALLEN, Jr., United States Air Force.**

ACM 32851.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 23 April 1997.

Decided 8 March 2001.

Appellate Counsel for Appellant: Colonel Douglas H. Kohrt, Colonel James R. Wise, Lieutenant Colonel Timothy W. Murphy, Lieutenant Colonel Kim L. Sheffield, Major Carol L. Hubbard, and Captain Karen L. Hecker.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Colonel Michael J. Breslin, Lieutenant Colonel Ronald A. Rodgers, Major J. Robert Cantrall, Major Allen G. Erickson, and Captain Peter J. Camp.

Before YOUNG, STARR, and BILLETT, Appellate Military Judges.

## OPINION OF THE COURT

BILLETT, Judge:

The appellant pled guilty to one specification of sodomy under Article 125, UCMJ, 10 U.S.C. § 925 and that plea was accepted. Contrary to his pleas, a military judge convicted him of four specifications of committing indecent acts upon females under the age of 16, two specifications of committing indecent acts, and one specification of adultery, all in violation of Article 134, UCMJ, 10 U.S.C. § 934, and one specification of conduct unbecoming an officer in violation of Article 133, UCMJ, 10 U.S.C. § 933. The military judge acquitted him of one specification of rape under Article 120, UCMJ, 10 U.S.C. § 920. The military judge sentenced the appellant to confinement for 4 years and dismissal from the service.

The appellant makes four assignments of error, namely: (1) The military judge improperly failed to suppress an admission made by appellant during the initial reading of the charges to him; (2) The military judge abused his discretion by failing to sever the rape and forcible sodomy specifications from other charges of indecent acts with females and conduct unbecoming an officer; (3) The appellant received ineffective assistance of counsel; and (4) After his sentencing, there was an improper application of Articles 57(a) and 58b, UCMJ, 10 U.S.C. §§ 857(a) and 858(b), in violation of the *Ex Post Facto* provisions of the Constitution. For the reasons set forth below, we determine appellant has failed to demonstrate error.

## SUPPRESSION OF SPONTANEOUS STATEMENT

█ On 2 December 1996, charges were preferred against the appellant in this case. During the reading of the charges, the appellant made a spontaneous, inculpatory statement that was later introduced at trial. The appellant's timely motion to suppress was denied, and he contends this was prejudicial error. To resolve this issue, we make the following findings of fact:

Prior to 2 December 1996, the appellant was under investigation for sexual misconduct. As far as the appellant knew, the scope of the investigation was limited to allegations made by his stepdaughter regarding his actions toward her. He established an attorney-client relationship with the local military defense counsel and the base legal office was aware of the relationship. On the morning of 2 December 1996, the appellant received word that his commander wished to meet him at the legal office conference room at 1600 hours. The appellant was not told that the meeting involved reading of the charges against him. The appellant reached his attorney's paralegal by phone and left a message for his attorney to meet him at the legal office at 1600 hours. At some point during the day, the legal office contacted the appellant's counsel and asked him to come to the legal office at 1600 hours.

At the appointed time, the appellant arrived at the legal office conference room. His commander and an attorney from the legal office, a captain, met him. When he didn't see his attorney, he inquired about his

whereabouts. His commander replied that the attorney was in the area. When the appellant asked if his attorney should be there, his commander and the captain replied "no." The commander then told the appellant that he could meet with his attorney "when we're done here." The reading of the charges, which included specifications involving his stepdaughter and four other females, commenced shortly thereafter. At about the same time this meeting got underway, the appellant's defense counsel was shown into the office of the deputy staff judge advocate a few doors away. Upon meeting the deputy, the defense attorney told him that he assumed the reason for the visit was to prefer charges against his client. The deputy disclosed that the reading of the charges was taking place at that time and that the defense attorney would have the opportunity to speak with his client when the reading was finished. The defense attorney was then given a copy of the charge sheet.

As his commander read the charge sheet to him, the appellant appeared pale and shocked. As the commander neared the end of the reading, the appellant spontaneously stated, "The fourth one is true, or partially true," or words to that effect. The appellant was cautioned not to say anything and the captain left to get the appellant's defense attorney. The commander finished the reading of the charges shortly thereafter and told the appellant he could meet with his defense counsel. The appellant then went down the hall where he had to wait a few moments until his defense counsel came out of the deputy's office.

Citing *United States v. Dowell*, 10 M.J. 36 (C.M.A.1980), the appellant claims he should have been read his Article 31 rights prior to the reading of the charges. He states that his statements were the product of surprise at being informed of charges which were new and unexpected. He further asserts that had he been permitted to speak with his attorney prior to the meeting with his commander, the making of a spontaneous, inculpatory statement would likely have been prevented. The basic issue for this Court to resolve is whether the reading of the charges represented the "functional equivalent of an interroga-

tion" which triggers the necessity of rights warnings under Article 31, UCMJ, 10 U.S.C. § 831 and Mil.R.Evid. 305.

Confessions illegally obtained are, of course, normally inadmissible as evidence. *See* Mil.R.Evid. 304(a). A person subject to the code who is required to give warnings under Article 31, UCMJ, may not interrogate or request any statement from an accused or a person suspected of an offense without advising that individual of the charges being investigated, the right to remain silent, and that any statement made may be used as evidence in a trial by court-martial. Mil. R.Evid 305(c). An interrogation includes any formal or informal questioning in which an incriminating response either is sought or is a reasonable consequence of such questioning. Mil.R.Evid. 305(b).

The *Dowell* case is a useful benchmark from which to begin an analysis, as it deals with the "functional equivalent of an interrogation" concept in the context of a reading of the charges. Unlike this case, *Dowell* involved an accused who previously had a number of charges preferred against him and was in pretrial confinement. Dowell's commander went to the confinement facility to perform a health and welfare visit and also to inform Dowell of additional charges that had been preferred against him. The commander made some preliminary remarks to Dowell to the effect of, "Well, how's it going?" and then began the reading of an additional charge. Dowell indicated some significant discomfort with the reading of the additional charge by making such comments as "I don't understand...where did this come from?" and "Wow, I can't believe this," whereupon his commander proceeded to comment upon the source of the charge by opining that "an additional witness had obviously surfaced." Dowell then launched into a discussion of the facts underlying the charges and made incriminating statements. His admissions apparently took the form of a narrative of some length. At no time did his commander make an attempt to stop him.

With this factual setting, Judge Everett indicated a concern over what he described as meetings between a commander and an accused that tended to induce the making of

a statement by the latter in the context of the reading of charges. He noted that it was an underlying fact of human nature that one who has been notified of serious charges against him will feel a need to say something in response to those charges. He stated that the foreseeability of such a reaction is all the greater when the accused is in confinement and the charges are being presented to him by his unit commander. The circumstances of Dowell's pretrial meeting with his commander convinced Judge Everett that the reading of the additional charge was the functional equivalent of an interrogation which triggered the requirement of Article 31 rights. The court also found a violation of Dowell's right to previously acquired counsel, citing *United States v. McOmber*, 1 M.J. 380 (C.M.A.1976), and stating that counsel must be notified before any such "interview" with the accused takes place.

We do not find *Dowell* controlling in this case. Although not specifically commented on by the Court in *Dowell*, the element of surprise was a factor, judging from the description of the accused's initial reactions to the reading of the charges. This element of surprise, present in both cases, was significantly greater in *Dowell*, where the accused had already gone through a preferral process and was under the impression his commander was paying him a routine visit. In the instant case, once the meeting began, appellant had no illusions about the purpose of the meeting with his commander. His surprise went only to the number of charges being brought. Surprise no doubt exists in a substantial number of preferrals and reading of charges because an accused will likely never know or be completely prepared for the precise number of charges brought in a case. To hold that surprise alone creates an inherently statement-inducing environment requiring the reading of Article 31 rights goes too far.

Other important factors distinguish this case from *Dowell*. The appellant was asked no questions by his commander and the commander did not comment upon the charges in any way. The commander was simply reading the charges at the time of the spontaneous statement, whereupon the commander

immediately told the appellant not to say anything further. Dowell held the rank of private. The appellant was a lieutenant colonel who held the position of Deputy Support Group Commander. Considering these circumstances, it is difficult to characterize the atmosphere of the appellant's meeting with his commander as "coercive." The reading of the charges was not the functional equivalent of interrogation. *See United States v. Ruiz*, 50 M.J. 518, 522 (A.F.Ct.Crim.App. 1998) (holding base exchange detective did not interrogate suspected shoplifter by telling him why he was detained), *aff'd*, 54 M.J. 138 (2000).

■ The appellant had established a relationship with counsel at the time of the reading of the charges. He suggests that a meeting with his counsel prior to the reading of charges would have had the prophylactic effect of preventing any spontaneous statements. However, the right to counsel does not ordinarily attach until the initiation of adversarial judicial proceedings against an accused. *United States v. Jordan*, 29 M.J. 177 (C.M.A.1989). *United States v. McOmber*, 1 M.J. 380 (C.M.A.1976), cited by the majority in *Dowell*, speaks to the right of counsel in criminal investigations where an attorney-client relationship exists at that early stage and the investigator is on notice that a service member is represented by a lawyer. There is some question as to whether *McOmber* continues to properly state the law owing to subsequent case law developments and changes to Mil.R.Evid. 305(e). Even assuming the continuing validity of *McOmber*, the appellant's right to counsel was not violated as his commander was in no respect acting as an investigator and was not conducting an interrogation, or the functional equivalent thereof, at the time of the reading of the charges. Moreover, the appellant's attorney was not completely removed from the act of reading the charges. The facts of the case show that defense counsel was well aware of the time and place of the reading of the charges and was, in fact, in very close proximity to the appellant at the time of the commander's meeting. This strongly suggests that attorney and client could have met prior to the notification of the charges had the attorney or the appellant insisted upon it.

## IMPROPER JOINDER OF OFFENSES

The appellant was charged with rape and forcible sodomy of, and adultery and indecent acts with, CS; conduct unbecoming an officer and indecent acts with his minor stepdaughter, TF; indecent acts with ST; and, indecent acts with two other minors, AS and LO. Prior to entering pleas, the appellant moved to sever Charges II and III from the other charges. He claims that the rape and forcible sodomy specifications were improperly joined with the other specifications and charges.

The appellant states that the evidence of his non-forcible sodomy and consensual intercourse with CS made the appellant look like a bad person and thus much more likely to have committed the other offenses. He insists that it was asking too much of the military judge to consider the facts supporting each allegation separately, even though the judge stated on the record that he had done precisely that.

■ The convening authority has discretion to refer two or more offenses charged against an accused to a single court-martial for trial, regardless of whether those offenses are related. Rule for Courts Martial (R.C.M.) 601(e)(2). Severance should be granted "only to prevent a 'manifest injustice.'" R.C.M. 906(b)(10); *United States v. Curry*, 31 M.J. 359, 372–73 (C.M.A.1990) (manifest injustice, not spillover, is test for granting severance); *United States v. Barrow*, 42 M.J. 655, 662 (A.F.Ct.Crim.App. 1995), *aff'd*, 45 M.J. 478 (1997). This Court reviews the military judge's denial of an accused's motion to sever for an abuse of discretion. *United States v. Curtis*, 44 M.J. 106, 129 (1996); *United States v. Foster*, 40 M.J. 140 (C.M.A.1994).

■ We find no abuse of discretion here and disagree with the appellant's suggestion that a military judge would have difficulty evaluating the charges separately. A military judge is presumed to know and follow the law. *See United States v. Kinman*, 25 M.J. 99, 101 (C.M.A.1987). Through training and experience, a military judge sitting as a factfinder is less susceptible to the dangers of "impermissible spillover" than an inexperienced lay court member. Also, the evidence supporting the lesser charges in this case was strong. We are confident that the military judge based his findings on that evidence and not general notions that appellant was a bad actor as demonstrated by other misdeeds. In fact, the military judge acquitted the appellant of rape and forcible sodomy. We are not persuaded that this is the rare case where the evidence and the nature of the charges have overcome the military judge's ability to avoid the prejudicial use of evidence. *Id.*

## INEFFECTIVE ASSISTANCE OF COUNSEL

The appellant's ineffective assistance of counsel claim has several components and is lengthy and detailed. He mentions an error contained in the staff judge advocate's recommendation (SJAR) that was not corrected or otherwise commented upon by his attorneys. The appellant claims that his lead trial attorney was not capable of providing effective assistance because of his physical and emotional condition immediately before and during the trial. He also incorporated into his appeal a declaration wherein he complains about his defense team's lack of experience and skill. He refers to dozens of instances from the record of trial where his counsel allegedly failed to effectively examine witnesses, bring out derogatory or conflicting information, or elicit or introduce information favorable to his case.

The guidelines provided by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), provide the starting point for any analysis of a claim of ineffective assistance. The two-pronged test of *Strickland* requires an appellant to demonstrate that his counsel was so deficient that he was not functioning as counsel within the meaning of the Sixth Amendment and then to demonstrate that his counsel's deficient performance prejudiced the defense. We need not delve into the issue of prejudice as we conclude that counsel's performance was not deficient in this case.

We reach the conclusion that the representation of defense counsel was not ineffective based on our review of the declaration sub-

mitted by the appellant and the full record. We deem it unnecessary to obtain an affidavit from defense counsel or to require additional fact-finding through a *Dubay*-type evidentiary hearing. The appellant's complaints are highly detailed and his factual assertions are adequate to state a claim. Basically, the Government does not contest the underlying facts of the claim, although it takes considerable exception to the conclusions that can be drawn therefrom. Therefore, we can proceed to decide the legal issue on the basis of those uncontroverted facts. *United States v. Ginn,* 47 M.J. 236 (1997).

█ The discrepancy in the SJAR was minor. That document asserted that four of the appellant's victims were under the age of 16. In fact, three of them were. While defense counsel did not correct this error, such an omission on a minor numerical error does not constitute ineffective assistance of counsel when viewed either in isolation or in the context of defense counsel's overall performance. As suggested by counsel for the appellee, the omission may have resulted from a tactical decision on counsel's part to refrain from quibbling over a minor error in order for the appellant to appear genuinely sorry for his actions.

The appellant asserts that his lead counsel did not perform effectively because he was dealing with stress and depression as a result of his mother's death a few months before the trial. The appellant submitted documents to this Court that indicated his lead counsel suffered a physical or mental breakdown during a court-martial held approximately six months after appellant's trial. As a result, the defense counsel began taking medication. The appellant asserts that counsel should have been on this same medication during his trial. The appellant's argument is not persuasive. Any claim that the appellant's defense counsel was unable to fulfill his trial responsibilities in March and April 1997 as a result of a condition that did not manifest itself for more than six months afterward is based on pure supposition. The

appellant provides no convincing examples of how his counsel's physical condition affected his trial performance.[1] There is nothing in the record that causes this Court to draw any adverse inferences concerning the state of the lead defense counsel's health during the proceedings below.

The appellant's 22–page declaration examines the record page by page and he asserts with painstaking detail every trial error and missed opportunity he feels were caused by his counsel. They are far too numerous to specifically identify and discuss here. It is sufficient to characterize the many assertions as: (1) failing to ask certain questions; (2) not eliciting certain perceived inconsistencies in the testimony of the government's witnesses; (3) not calling alibi witnesses; and (4) not establishing the appellant's good military character. In making this claim, the appellant has cast a critical eye upon the most minute details of his attorneys' trial strategy and conduct of the case, although the record does not indicate the appellant had any contemporaneous qualms about the way the defense was conducting its case.

█ Effectiveness of counsel is determined by reviewing counsel's entire performance during the proceedings. *See United States v. Murphy,* 50 M.J. 4, 8 (1998); *United States v. Duffey,* 37 M.J. 511 (A.F.C.M.R. 1993). Additionally, where more than one attorney represents an accused, a reviewing court will look at the combined efforts of the defense team in assessing overall performance for purposes of an ineffectiveness of counsel claim. *United States v. Simoy,* 46 M.J. 592 (A.F.Ct.Crim.App.1996) (citing *United States v. Boone,* 42 M.J. 308 (1995)), *aff'd in part, rev'd in part,* 50 M.J. 1 (1998). Our overall view of the record leads us to conclude that the appellant received adequate representation. This was a fairly complex trial with multiple witnesses and issues. In our view the defense team pursued motions aggressively and thoroughly, cross-examined government witnesses appropriately and elicited testimonial evidence in a manner

---

1. Appellant indicates that his counsel was confused during the trial. The record indicates that during questioning of a victim on one occasion, lead defense counsel may have been momentarily confused as to the identity of the witness. This is not particularly significant or noteworthy given the number of victim witnesses called to testify in this case.

consistent with the defense's theory of the case. Whether or not a better theory or theories of defense were available is of no consequence. A consideration of the appellant's many specific complaints reveals a layman's lack of understanding of trial tactics and the development of easily understandable points and ideas for the factfinder.

 While the defense did not put on an affirmative case, we are not prepared to pass judgment on what is clearly a trial tactic within the particular purview of the attorneys trying the case. In reviewing ineffective assistance of counsel claims, appellate courts will not "second-guess" the tactics of counsel unless there is no plausible basis for them. *United States v. Sanders*, 37 M.J. 116 (C.M.A.1993). We find no such infirmity here.

## VIOLATION OF THE *EX POST FACTO* CLAUSE

The appellant's first assignment of error involves the applicability of the amended Article 57(a) UCMJ, 10 U.S.C. § 857(a), and Article 58b, UCMJ, 10 U.S.C. § 858b, which provide that adjudged forfeitures and reductions in grade take effect on the earlier of the date that is 14 days after the date on which sentence is adjudged or the date on which the sentence is approved by the convening authority. Articles 57(a) and 58b became effective for offenses committed on or after 1 April 1996. The appellant argues that because one or more of his offenses took place before 1 April 1996, the operation of the Articles in his case violates the *Ex Post Facto* clause of the Constitution.

The proper disposition of cases where the dates of the charged offenses fall on both sides of 1 April 1996 was settled in *United States v. Carter*, 49 M.J. 392 (1998) (mem.). The Court of Appeals for the Armed Forces held that applying Articles 57(a) and 58b in a setting such as this did not violate the *Ex Post Facto* Clause. As at least one of the appellant's offenses was committed after 1 April 1996, he is not entitled to relief on this issue.

## CONCLUSION

We also note that the court-martial promulgating order fails to adequately describe the offense of adultery (Specification 3 of Charge I). The order should be amended to reflect that the appellant was a "married man." After administrative correction of the order, the case need not be returned to this Court. The findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Accordingly, the findings and sentence are

AFFIRMED.